**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FURNAS ELECTRIC COMPANY, Respondent.**

**No. 71–1356.**

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1972.

Decided June 13, 1972.

Rehearing Denied July 12, 1972.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Eugene B. Granof, Kenneth

Pearlman, Attys., N. L. R. B., Washington, D. C., for petitioner.

John F. Cusack, James J. Cusack, Jr., Robert E. Cusack, Chicago, Ill., for respondent.

Before HAMLEY,* KILEY and SPRECHER, Circuit Judges.

HAMLEY, Circuit Judge.

The National Labor Relations Board has petitioned for enforcement of its unfair-labor-practice order issued against Furnas Electric Company on June 4, 1970, reported as 183 NLRB No. 1, and in 1970 CCH NLRB ¶ 21,970, p. 28,255. The Company is engaged in the manufacture and sale of electrical equipment at Batavia, Illinois.

The Board found that the Company violated section 8(a) (1) of the National Labor Relations Act, as amended (Act), 29 U.S.C. § 158(a) (1), by (1) threatening its employees with loss of benefits and additional duties if International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), (Union) won the representation election scheduled for January 29, 1968, (2) creating the impression that the employees were under surveillance, (3) interrogating its employees concerning their union activities, (4) promulgating illegal no-distribution-of-literature and no-solicitation rules prior to February 20, 1968, and (5) announcing wage increases and improved conditions of employment before a rerun representation election set for June 24, 1968.

The Board also found that the Company violated section 8(a) (3) and (1) of the Act, 29 U.S.C. § 158(a) (3) and (1), by discharging employees Eloise Guenette and Kay Vander Valk for engaging in union and other protected concerted activities.

In addition to ordering the Company to cease and desist from engaging in the asserted unfair labor practices and to post the usual notices, the Board ordered the Company to offer Guenette and Vander Valk immediate and full reinstatement and to make them whole for any losses they may have suffered.

In resisting enforcement of the Board order, the Company first questions the sufficiency of the evidence to support the Board's finding that the two employees were not discharged for cause but because of their protected union activity. In particular, the Company complains because the Board chose to believe the testimony of three witnesses, two of whom are the discharged employees, and the third an employee who was actively engaged as a watcher for the Union in the representation elections, and chose to "disregard" the testimony of nineteen witnesses, and twenty-five exhibits offered by the Company.

Section 10(e) of the Act, 29 U.S.C. § 160(e), provides that the findings of the Board with respect to questions of fact, "if supported by substantial evidence on the record considered as a whole shall be conclusive." Construing this language, the Supreme Court said, in Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951): "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Summarizing its views, the *Universal Camera* Court said, at 340 U.S. 490, 71 S.Ct. at 466:

"The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both."

With these principles in mind we turn to a consideration of the Board's findings concerning the Company's discharge of employees Kay Vander Valk and Eloise Guenette. The Board adopted the findings made by the Trial Examiner, and therefore we first summarize the latter's

---

* The Honorable Frederick G. Hamley, United States Circuit Judge of the Ninth Judicial Circuit, sitting by designation.

comments on the evidence, and findings, pertaining to the discharge of the two employees.

Vander Valk and Guenette were employed as surface grinders in the Company's Department 8, which was under the supervision of Foreman Ed Obenlander. Set-up man Bob Potts, lapping-machine operator Connie Stanley and grinders Jane Barker and Betty Henson worked on the same shift in Department 8.

The Trial Examiner found that Vander Valk and Guenette were discharged because they solicited for the Union and because they complained about working conditions.[1] In support of the finding that these employees had been discharged because they solicited for the Union, the Trial Examiner cited evidence tending to show: (1) the Company, through its supervisor, Obenlander, knew that Vander Valk and Guenette were soliciting for the Union, (2) the Company was watching such activity, and so warned the two women, (3) the Company was unfriendly to Union representation and, when union activity was discovered, became more strict in the enforcement of work procedures, and (4) Vander Valk and Guenette were terminated on equivocal grounds shortly after their union activity became known.

In support of his finding that the employees were discharged because they complained about working conditions, the Trial Examiner cited evidence tending to show: (1) all of the grinders complained to the Company's works manager, Richard T. Krause, of Obenlander's arbitrary supervision and especially his new limitations on their activities, and (2) the Company's general foreman, Robert W. Philips, and Obenlander, told the complaining women that they were not to go over Obenlander's head in making complaints. The Trial Examiner found that while all of the grinders had participated in the complaint concerning working conditions, Vander Valk and Guenette were singled out for termination because of their known union activities.[2]

In challenging these findings in this enforcement proceeding, the Company urges that the Examiner ignored the considerable evidence tending to show that Vander Valk and Guenette were discharged for insubordination, inattention to duties, making false and malicious statements concerning another employee, disrupting the routine of the department and impairing its efficiency. The evidence which the Company contends was disregarded also tended to show that the two employees had not engaged in substantial union activity during working hours, that the woman who did act on behalf of the Union as a watcher in both representation elections [3] remained in the Company's employ, that the anti-union conduct attributed by the Trial Examiner to the Company was the conduct of the lowest level of supervision, and that during the course of both election campaigns, the Company's plant and premises were strewn with union literature and authorization cards without criticism or hindrance.

In his twenty-six page decision, the Trial Examiner considered practically all

---

1. The Company does not contest the Board's holding that off-duty solicitations for a union, and bona fide complaints about working conditions, are protected activities and that discharge for either of these reasons would be an unfair labor practice under the Act.

2. While the Trial Examiner sustained, in substance, the allegations of the complaint concerning the discharge of Vander Valk and Guenette, and some additional allegations with regard to unfair labor practices, he rejected a number of other

allegations concerning unfair labor practices. This led to the dismissal of the allegations of paragraph VII, paragraph VIII(c), (d), (f), (g), (h) and (i), and other portions of the complaint.

3. On December 27, 1967, the Union petitioned the Board for certification and an election was held on January 29, 1968. The Union lost and filed objections to the conduct of the election. As a result, a second election was held on June 24, 1968, which the Union also lost.

668

of these items of evidence relied upon by the Company. The Trial Examiner refused to credit much of this testimony because it was held to be uncorroborated, unsupported by Company investigations, contradicted by other testimony by the same witness or other Company witnesses or because testimony to the contrary had been corroborated and seemed more reliable. The Trial Examiner also questioned the probative value of some of the testimony produced by the Company, because it resulted from the propounding of leading questions requiring little more than a "yes" or "no" answer.

■ Insofar as we can determine from an examination of the record, the Trial Examiner made every effort to arrive at a fair estimate of the worth of the testimony bearing upon the discharge of Vander Valk and Guenette. The circumstances relied upon by the Examiner in crediting the testimony of one witness and not that of another, as articulated in the decision, are relevant. As observed in footnote 2, above, the decision contains internal evidence that the Trial Examiner exercised a discerning judgment in appraising the sufficiency of the evidence to support the various allegations of the complaint. Having in mind our isolation from the actual give and take of the hearing room, the obvious care and impartiality with which the Trial Examiner conducted the hearing, his familiarity and expertise in matters of this kind, and the confirmation provided by our own study of the record, we conclude that the findings in question are supported by substantial evidence on the record considered as a whole.

The Company next questions the Board's finding that the Company engaged in an unfair labor practice with regard to its no-solicitation and no-distribution-of-literature rules, and the cease and desist order based thereon.

A Company rulebook, distributed to its employees on April 10, 1967, contained these provisions:

"No solicitation or collecting of contributions for any purpose whatsoever is allowed on company property unless authorized by the Industrial Relations Department.

"There shall be no distribution of literature, written or printed matter, of any description on company premises unless authorized by the Industrial Relations Department."

The no-solicitation and no-distribution rules make no distinction between work time and non-work time, nor do they make any distinction between work and non-work areas. These rules were promulgated within six month before the charge relating thereto was filed.

The Trial Examiner found that neither of these rules had been enforced in a manner which would curtail union solicitation or distribution of literature for a union. The Trial Examiner also found that, on February 20, 1968, the Company's president spoke to the employees over the public address system advising them that these rules would be applicable only to violations which occur on company time. Thereafter, a notice to that effect was posted and amended rulebooks with the two rules deleted were issued to newly-hired employees. However, the Trial Examiner found that there was no evidence that employees who had been hired prior to February 20, 1968, received amended rulebooks.

The Trial Examiner recommended that the allegations of the complaint be dismissed insofar as they charge that the Company enforced such rules. But he concluded that the promulgation of the no-solicitation and no-distribution rules constituted an unfair labor practice and that the Company's later modification of these rules was not sufficient to correct their illegality. Consequently he recommended that the Company be ordered to cease and desist the maintenance of these rules and that the Company post a notice that it will not promulgate or maintain a no-solicitation or no-distribution-of-literature rule which prohibits union solicitation during non-work time or prohibits the distribution of union literature in non-work areas during non-work time.

In general, the Board accepted the Trial Examiner's findings concerning these two rules. But, contrary to the Trial Examiner's findings, the Board found that the rules were sufficiently modified and the notice of modification was sufficiently conveyed by the Company on or about February 20, 1968, to correct their illegality. The Board, however, did agree with the Trial Examiner's findings that the rules had been promulgated within six months of the charge relating thereto. The Board also stated that (1) although not enforced, the rules were maintained during the Union's organizational drive, and (2) the subsequent modification of the rules, correcting their illegality, did not have the retroactive effect of validating these prior violative acts, nor preclude the Board from issuing an appropriate cease and desist order.

Accordingly, the Board found that the actions of the Company prior to February 20, 1968, in promulgating and maintaining illegal no-solicitation and no-distribution rules were in violation of section 8(a) (1) of the Act, 29 U.S.C. § 158 (a) (1). The Board accepted the Trial Examiner's recommendation concerning the form of the cease and desist order with regard to these rules.

The Company argues: (1) neither the Union as charging party nor the women who were discharged based any claim upon the issuance or existence of the rules in question, and the no-solicitation rule was never raised throughout the hearing as an issue, (2) the no-solicitation rule is expressly limited to "solicitation or collection of *contributions*" (emphasis added) and was not directed against the solicitation of union membership, dues, applications and the like, (3) the rules were never enforced and hence, under N.L.R.B. precedent, their mere existence did not warrant a cease and desist order, and (4) there was no showing that the ability of the Union to carry its message to the employees was diminished by the rules.

■ The Board does not question the Company's assertion that the validity of the no-solicitation rule was not an issue at the hearing. When, in addition to this circumstance, we consider the facts that the rules do not specifically mention union activities, they were never enforced,[4] no prejudice to the Union was shown, the Company specifically advised employees that the rules were not intended to impair proper union activity, and the two rules were stricken from the Company's rulebook, we think it would be inappropriate to enforce the cease and desist order insofar as it relates to the long-since revoked no-solicitation and no-distribution-of-literature rules. As to this feature of the Board order, enforcement will therefore be denied.[5]

■ Finally, the Company asserts, the Board erred in deciding that the Company's announcement of an increase in wages and benefits, prior to knowledge of the date that a new election was to be held, and while exceptions were pending before the Board, was an unfair labor practice.

We have examined the findings and the evidence relevant thereto, and conclude that the findings are supported by substantial evidence and fully warrant the provisions of the cease and desist order pertaining to the Company's announcement of an increase in wages and benefits.

The Board order herein will be enforced except as it pertains to the Company's former no-solicitation and no-distribution-of-literature rules.

4. *See* Lion Knitting Mills, Co., 160 NLRB 801, 802, n. 1, 63 LRRM 1041 (1966).

5. The fact that the objectionable rules were specifically withdrawn prior to the filing of the complaint herein distinguishes this case from P. R. Mallory & Co., v. N. L. R. B., 389 F.2d 704, 709–710 (7th Cir. 1967).