**E.N. BISSO & SON, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 95–1480.

United States Court of Appeals, District of Columbia Circuit.

Argued May 10, 1996.

Decided May 31, 1996.

Thomas P. Hubert, New Orleans, LA, argued the cause for petitioner, with whom William E. Hester, III was on the brief. Stephen Rose entered an appearance.

Julie B. Broido, Senior Attorney, National Labor Relations Board, appeared to argue the cause for respondent, with whom Linda R. Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Peter D. Winkler, Supervisory Attorney, Washington, DC, were on the brief.

Before: EDWARDS, Chief Judge,
SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

E.N. Bisso & Son, Inc. ("Bisso" or "Company"), a company providing marine towing services, petitions for review of an order of the National Labor Relations Board ("Board" or "NLRB") requiring it to bargain with the Seafarers International Union ("Union"). The Board's order issued in the wake of a representation election in which the Company's engineers and deckhands selected the Union to be their bargaining representative. *See E.N. Bisso & Sons, Inc.*, 318 N.L.R.B. No. 120 (1995), *reprinted in* Appendix ("App.") 118–20. Bisso now complains that the election was tainted by pre-election rumors, allegedly initiated by Company supervisors sympathetic to the Union. According to Bisso, the culprits who spread the rumors told employees that the Company would discharge deckhands and engineers if the Union did not win the election. Because of this alleged taint to the election, Bisso contends that the Company should not have been ordered to bargain with the Union.

In the hearing on Bisso's post-election challenges, after listening to the testimony of numerous employees, supervisors, and members of top management, the Hearing Officer *specifically discredited* several witnesses whose testimony was viewed by the Company as crucial in establishing their theory of the case. *See E.N. Bisso & Sons, Inc.*, Hearing Officer's Report (Sept. 22, 1994) at 11–13, *reprinted in* App. 36–38. In short, the Hearing Officer found that the Company was un-

able to establish the facts necessary to support its theory. Based on his credibility determinations, the Hearing Officer held that the termination rumor was not communicated by Bisso supervisors. *Id.* at 13, *reprinted in* App. 38. He also found that no employee heard a termination rumor from anyone who could carry out the threat, and so concluded that it was improbable that any employee had voted out of fear of retaliation. *Id.* at 15–16, *reprinted in* App. 40–41. Finally, he found that the Company had taken steps before the election to discredit the rumor. *Id.* at 15, *reprinted in* App. 40.

The NLRB, over Bisso's objections, adopted the findings and conclusions of the Hearing Officer. In rejecting Bisso's challenges to the credibility findings of the Hearing Officer, the NLRB stated a well-known rule, to wit: the Board will not "overrule a hearing officer's credibility resolutions unless the clear preponderance of all the relevant evidence convinces us that they are incorrect." *E.N. Bisso & Sons, Inc.*, Decision and Certification of Representative at 1 n. 2, *reprinted in* App. 76. Finding no basis to overturn the Hearing Officer in this case, the Board issued a certification of representation on behalf of the Union.[1]

It is quite clear that a hearing officer is "uniquely well-placed to draw conclusions about credibility when testimony [is] in conflict," and is "also far better situated than are we to draw conclusions about a matter as ephemeral as the emotional climate of the [workplace] at the time of the election." *Amalgamated Clothing & Textile Workers Union v. NLRB*, 736 F.2d 1559, 1563 (D.C.Cir.1984). Thus, a hearing officer's

---

1. Following certification, Bisso refused to recognize the Union, again claiming that the election had been tainted. The Board relied on the findings from the representation proceeding in rejecting this claim and holding that Bisso had unlawfully refused to bargain in violation of section 8(a)(5) of the National Labor Relations Act. *See* U.S.C. § 158(a)(5) (1994) ("It shall be an unfair labor practice for an employer ... to refuse to bargain collectively with the representatives of his employees...."); *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964) ("[I]n the normal course of events, Board orders in certification proceedings ... are not directly reviewable in

the courts.... Such decisions, rather, are normally reviewable only where the dispute concerning the correctness of the certification eventuates in a finding by the Board that an unfair labor practice has been committed...."); *Amalgamated Clothing Workers of America v. NLRB*, 424 F.2d 818, 829 (D.C.Cir.1970) (In situations where an employer refuses to bargain with a representative union after the Board has upheld the union election, "the Board, applying its rules, has consistently and correctly refused to permit the relitigation in an unfair labor practice proceeding of 'any issue which was, or could have been, raised in the representation proceeding.'") (quoting 29 C.F.R. § 102.67(f)).

"credibility determinations may not be overturned absent the most extraordinary circumstances such as utter disregard for sworn testimony or the acceptance of testimony which is on its fac[e] incredible." *Id.* (internal quotation omitted). In this case, there is nothing even approaching an "extraordinary circumstance" warranting judicial review.

With this record in hand, and after reviewing the parties' briefs and the relevant case law, the members of the court assigned to hear this case were hard-pressed to imagine *any* legitimate basis for the Company's petition for review. Our concerns on this score were the subject of questioning at oral argument. Counsel for the Company was asked:

QUESTION: ... Have you found any case, anywhere, any time, any place, in any court where a hearing officer's determination of credibility in an R[epresentation] case was in an 8(a)(5) [refusal to bargain] context reversed by a court of appeals?

MR. HUBERT: Credibility findings are very difficult to overrule and I acknowledge that as well.

QUESTION: The answer is no?

MR. HUBERT: I haven't seen that....

Tr. of Oral Argument at 4. When pressed further, counsel conceded that he had found a couple of cases in which the NLRB itself had rejected credibility determinations of a hearing officer, but none in which a court of appeals had rejected a hearing officer's credibility findings that had been upheld by the Board. Whether or not there are any such cases, this case surely offers no basis for the court to second-guess *both* the Hearing Officer and the Board on the credibility findings at issue here.

Recognizing the weakness of any position founded on an attack of the Hearing Officer's credibility findings, counsel for Bisso switched gears during oral argument. As an apparent alternative theory of the case, counsel suggested that the court ought to be particularly scrupulous in assessing the circumstances surrounding the Union election because there are a lot of "folks out there [who are not] well versed in labor law." Tr. of Oral Argument at 9. Counsel went so far as to insinuate that the court should carefully peruse all election campaign activities (even perfectly lawful conduct) to satisfy itself that there is no taint to the election. This is an outlandish suggestion, and one that defies both common sense and every known precept governing judicial review of NLRB decisions. *See, e.g., C.J. Krehbiel Co. v. NLRB*, 844 F.2d 880, 882 (D.C.Cir.1988) (per curiam) ("[T]he Board is entrusted with a wide degree of discretion in conducting representation elections. The scope of our review of such decisions is narrow." (citations omitted)); *Amalgamated Clothing & Textile Workers Union*, 736 F.2d at 1562, 1563 ("In controlling and overseeing representation elections, the Board enjoys great discretion," and "important in counseling deference to Board decisions in cases of this kind is the fact that the Board's particular expertise qualifies it—rather than the courts—to decide whether to call for a rerun election."); *Amalgamated Clothing Workers*, 424 F.2d at 827 ("The [National Labor Relations] Act entrusts the conduct of representation elections to the Board, which must have wide discretion in controlling and overseeing the election process.... In short, there is a heavy burden on the Company in showing that the election was improper.").

■ In sum, the Company's petition for review is at best specious, bordering on frivolous. Because the Company's petition has absolutely no sound basis, the pursuit of this matter in the court of appeals caused counsel to come as close to the edge of sanctionable conduct as is possible without actually suffering that disgrace. *See Reliance Ins. Co. v. Sweeney Corp., Md.*, 792 F.2d 1137, 1138 (D.C.Cir.1986) (per curiam) ("Appellate courts have the undisputed power to sanction a party who brings a frivolous appeal.... An appeal is considered frivolous when its disposition is obvious, and the legal arguments are wholly without merit." (internal quotations omitted)); *see also Garden State Broadcasting Ltd. Partnership v. FCC*, 996 F.2d 386, 396 (D.C.Cir.1993) (Sanctionable conduct consists of "making objectively groundless legal arguments in briefs filed in this court." (internal quotation omitted)); *South Star Communications, Inc. v. FCC*, 949 F.2d 450, 452 (D.C.Cir.1991) (per curiam) (Counsel's pursuit of a frivolous appeal dem-

onstrated "conspicuously bad judgment," and merited sanctions because his asserted obligation to his client "did not relieve him of his responsibility as a member of the bar.").

The Company's petition for review is denied, and the Board's Cross–Application for Enforcement is granted. Costs shall be paid by the petitioner.[2] The mandate of the court shall issue forthwith, without delay.

*So ordered.*

---

**2.** The NLRB shall submit a statement of costs to the Clerk, with a copy to Petitioner, within 14 days of the date of this decision. *See* Fed.R.App P.

39 (Costs may be awarded to the prevailing party, including an agency of the United States, as ordered by the court.).