# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 10, 2018        Decided May 1, 2018

No. 16-1350

PRUITTHEALTH-VIRGINIA PARK, LLC,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 16-1399

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

*Jonathan E. Kaplan* argued the cause and filed the briefs for petitioner.

*Mischa K. Bauermeister*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Richard F. Griffin*, *Jr.*, General Counsel at the time the brief was filed, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Usha Dheenan*, Supervisory Attorney.

Before: ROGERS and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case concerns a union representation election in which Retail, Wholesale, and Department Store Union/UFCW Southeast Council ("the Union") prevailed in its campaign to represent certain employees working for Petitioner PruittHealth-Virginia Park, LLC ("PruittHealth" or "the Company") in its Virginia Park facility ("the Facility") in Atlanta, Georgia. The election took place on August 20, 2015 and resulted in a 35–31 vote in favor of the Union, with two non-determinative challenged ballots. PruittHealth filed objections to the election with the National Labor Relations Board ("Board"), claiming that the Union engaged in misconduct during its election campaign that destroyed the conditions required for a free and fair election. Following a hearing conducted by a Hearing Officer, the Board's Regional Director overruled the objections and certified the Union as the employees' lawful bargaining representative.

PruittHealth refused to bargain with the Union in order to contest the validity of the Regional Director's certification decision. The Union then filed unfair labor practice charges and the Board's General Counsel issued a complaint. A three-member panel of the Board found that PruittHealth's refusal to bargain constituted an unfair labor practice under Section 8(a)(1) and (5) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1), (5), and ordered the Company to bargain with the Union. *See Pruitthealth-Virginia Park, LLC*, 364 NLRB No. 125, slip op. at 2 (Sept. 22, 2016). PruittHealth now

petitions for review, and the Board cross-applies for enforcement of its decision and order.

In its petition for review, PruittHealth contends that the Board erred in overruling its objections to the election, which alleged, in relevant part, that: Union demonstrators repeatedly and intentionally blocked employees' vehicles as they were entering and exiting the Facility's premises; two employees were subjected to objectionable threats of physical violence; and the Union unlawfully photographed employees on PruittHealth's premises during the critical period before the election. PruittHealth also asserts that the Hearing Officer and Regional Director failed to properly consider the cumulative impact of the allegedly objectionable conduct and the closeness of the election results in assessing the Company's objections.

On the record before us, we find no merit in PruittHealth's claims. We hold that the Board's adoption of the Regional Director's decision overruling PruittHealth's blocking and threats-related objections is supported by substantial evidence and consistent with Board precedent. We further hold that we lack jurisdiction over PruittHealth's claim that the Board erred in dismissing its unlawful photographing objection. The Company failed to raise this claim with the Board in the representation proceedings, as required by Section 10(e) of the Act. *See* 29 U.S.C. § 160(e). We therefore deny the petition for review and grant the Board's cross-application for enforcement.

## I. BACKGROUND

PruittHealth operates a nursing home located on Briarcliff Road in Atlanta, Georgia. The Facility has North and South entrances, which are 30 to 50 yards apart and lead to a parking lot in the rear of the Facility. In the summer of 2015, the Union

began to organize employees at the Virginia Park Facility. On July 30, 2015, the Union filed a petition with the Board to represent an 84-person bargaining unit of certified nursing assistants, restorative aides, activity assistants, medical record clerks, and service and maintenance employees. In the August 20, 2015 election, the Union prevailed by a vote of 35 to 31. There were two non-determinative challenged ballots.

A week later, PruittHealth filed written objections to the election with the Regional Director, contending that the Union engaged in misconduct that tainted the outcome of the election and warranted setting aside the election results. The Company alleged, *inter alia*, that Union demonstrators repeatedly and intentionally blocked employees' ingress to and egress from the Facility's premises and hindered employees' access to a public bus stop in front of the Facility. The Company further contended that the Union intimidated and coerced employees by threatening physical violence against individuals who chose not to vote for the Union. The Company also asserted that the Union unlawfully photographed employees on PruittHealth's premises. After an investigation, the Regional Director ordered a hearing on the objections.

A Board Hearing Officer presided over the hearing on PruittHealth's objections. As relevant here, the parties presented evidence that, on August 13 and 19, 2015, the Union conducted demonstrations between approximately 2:30 pm and 4:00 pm. Around 15 to 20 individuals participated in the demonstrations, including a few Union representatives as well as individuals from other labor organizations and community groups. Demonstrators patrolled the area between the Facility's two entrances, carrying pro-Union signs and making pro-Union statements with a bullhorn. PruittHealth called the police each day, but there was no evidence that any arrests were made.

Five witnesses testified for the Company about the alleged blocking incidents. Employee Yolando Thornton testified that, as she was driving into the Facility's premises one day, a demonstrator stepped off a curb and approached her car to hand her a pro-Union flyer. Thornton did not take the flyer, told the man to "move out of the way," and proceeded into the driveway. Joint Appendix ("J.A.") 31. The exchange lasted no more than 60 seconds. Employee Andrew Johnson testified that, on August 18 or 19, as he was driving into PruittHealth's entrance, a demonstrator came to the driver's side of the car, encouraged him to "vote yes [for] the Union," and attempted to hand him a flyer. J.A. 61–62, 68. Johnson came to a stop for a few seconds, gave the man "[a] look," and proceeded into the parking lot. J.A. 62–63. Employee Erica Merriweather testified that as she was driving into the Facility one day, a demonstrator walked to her driver's side window and mentioned something about vacation and holiday pay. She blew her horn, the demonstrator moved out of her way, and she drove into the parking lot. She also testified that, on a different day, demonstrators had the Facility's driveway blocked in, and a demonstrator placed a pro-Union flyer on her car while she was slowly driving into the Facility. Area Vice President Suzanne Gerhardt testified that, on either August 13 or 19, a demonstrator obstructed her view of oncoming traffic as she was exiting the Facility's grounds by car. Lastly, employee Jan Marie Benn testified that, on August 18 or 19, demonstrators "swarm[ed] around the bus stop" in front of the Facility, chanting "shame on Pruitt" and holding pro-Union signs. J.A. 40. Although she was standing at the bus stop, the bus passed by without stopping, which, in Benn's view, occurred because demonstrators were "swarming around the bus stop." *Id.*

PruittHealth's counsel elicited testimony from Thornton and Merriweather about the alleged threats. During Thornton's direct examination, as she was explaining her encounters with

demonstrators when she was driving into work, PruittHealth's counsel asked her, "Did any union supporters threaten to f--- you up?" to which Thornton replied, "Yes." J.A. 21. On cross-examination, she clarified that the demonstrator said, "If you don't vote yes for the Union, we will f--- you up." J.A. 34. She did not see who made the statement but noted that it came from someone standing in the crowd of demonstrators who were about ten feet away. She testified that the comment made her feel "very uneas[y]" and made her "not want[] to come to work," J.A. 22, and that she did not "vote [her] conscience" in the election "because [of] the threats," J.A. 23. Thornton did not testify whether she voted for or against the Union.

Merriweather testified that, as she was clocking into work one day in the week before the election, she observed four coworkers about twenty feet away from her talking in a "little huddle" about "issues that had been going on that week." J.A. 114. She heard them say, "they don't know that the Union . . . the Union will f--- people up or get . . . will f--- people up or get f---ed up." J.A. 88. She felt the comment was directed at her "because of the stuff that had been going on and saying that week because of the disagreements we were having." J.A. 114. Merriweather submitted a resignation notice after she heard these comments, but she later retracted the resignation. One of the employees Merriweather claimed was standing in the group of employees, Deidre Ward, denied that any such statement was made.

Finally, Merriweather and Gerhardt testified regarding PruittHealth's allegation that demonstrators photographed employees on its premises. Merriweather stated that she observed demonstrators holding their cell phones "toward the building." J.A. 112. She assumed this meant that they were taking pictures. Gerhardt stated that she saw demonstrators

holding their cell phones toward the Facility, but did not see anyone take a picture.

After the hearing, the Hearing Officer issued a written report on the objections, recommending that they be overruled in their entirety. The Hearing Officer found that "the credited evidence established that individual demonstrators approached cars *from the side* to hand them a flyer, and attempted to persuade them peacefully to support the [Union]." J.A. 241. He found no evidence that demonstrators "maneuvered in front of cars to intentionally block employees from entering the facility, nor was there evidence that any employees had trouble entering [PruittHealth's] facility." *Id.* The Hearing Officer also found "no evidence that demonstrators made any threats, gestures, or engaged in any other menacing or coercive conduct rendering a fair election impossible." J.A. 242. He found the record devoid of the context necessary to show that the comment allegedly aimed at Thornton was actually directed at her, and he afforded Thornton's testimony "little probative weight" because it was elicited in response to a leading question. *Id.* He similarly declined to credit Merriweather's testimony about the incident near the time clock, because it was "too unclear to establish the employees were threatening [other] employees," and instead credited Ward's denial that any such threat was made. J.A. 243. The Hearing Officer also found the record insufficient to show that demonstrators photographed employees.

PruittHealth timely filed exceptions to the Hearing Officer's report with the Regional Director. Its exceptions stated that, although it "respectfully disagrees with the totality of the Hearing Officer's conclusions," its "[e]xceptions are focused upon the most egregious, coercive conduct – and the failure of the Hearing Officer's Report to reference (let alone credit) crucial, credible testimony." J.A. 250. The Company

specifically raised exceptions to the Hearing Officer's findings regarding the blocking and threats objections but not the photographing objection.

The Regional Director adopted the Hearing Officer's recommendation to overrule the objections and certified the Union as the collective bargaining representative. In addition to adopting the Hearing Officer's findings and conclusions, the Regional Director added that, in his view, the record indicated that demonstrators caused, at most, "momentary inconveniences" to some employees as they entered or exited the Facility. J.A. 271. He also concluded that, on this record, the Merriweather threat did not rise to the level of objectionable conduct; the Thornton threat was "too isolated and de minimus to warrant setting aside the election," J.A. 272; and the statements in question "appear[ed] to be the kind of rough language seen in close elections made as a result of bravado or over exuberance rather than credible threats," J.A. 273. The Board subsequently denied PruittHealth's request for review of the Regional Director's certification.

Following the Union's certification, PruittHealth refused to bargain with the Union. The Union then filed unfair labor practice charges and the Board's General Counsel issued a complaint charging PruittHealth with violating 29 U.S.C. § 158(a)(1) and (5). PruittHealth admitted its refusal to bargain, but did so in order to contest the validity of the Union's certification on the basis of its objections in the representation proceeding. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77 (1964); *Durham Sch. Servs., LP v. NLRB*, 821 F.3d 52, 57 (D.C. Cir. 2016) (noting that an employer may refuse to bargain with certified unions "in order to elicit an unfair labor practice charge and thereby obtain judicial review" of certification orders). The Board, on a Motion for Summary Judgment, held that PruittHealth violated 29 U.S.C. § 158(a)(1)

and (5) and ordered PruittHealth to bargain with the Union. *See Pruitthealth-Virginia Park*, 364 NLRB No. 125, slip op. at 2. PruittHealth then filed a petition for review in this court, and the Board cross-applied for enforcement of its order.

## II.  ANALYSIS

### A.  Standard of Review

The Board is afforded broad discretion in assessing "the propriety and results of representation elections." *N. of Mkt. Senior Servs., Inc. v. NLRB*, 204 F.3d 1163, 1167 (D.C. Cir. 2000). A court will set aside a Board decision to certify an election only in "the rarest of circumstances." *Id.* "In reviewing the validity of election results, we ask whether the Board 'has followed appropriate and fair procedures, and has reached a rational conclusion' in addressing any objections to the election." *Durham Sch. Servs.*, 821 F.3d at 58 (quoting *Serv. Corp. Int'l v. NLRB*, 495 F.3d 681, 684 (D.C. Cir. 2007)). We will uphold the Board's decision unless it "acted arbitrarily or otherwise erred in applying established law to the facts at issue, or if its findings are not supported by substantial evidence." *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 32 (D.C. Cir. 1995) (citations omitted); *see also* 29 U.S.C. § 160(e), (f).

"[T]he Board requires that elections take place under 'laboratory conditions' free from coercion by the union or the employer." *SSC Mystic Operating Co., LLC v. NLRB*, 801 F.3d 302, 309 (D.C. Cir. 2015) (citation omitted). Employers and unions may not "'interfere with, restrain, or coerce employees in the exercise' of their Section 7 rights" to participate in labor organizations, collectively bargain, or refrain from such activities. *Id.* (quoting 29 U.S.C. § 158(a)(1), (b)(1)(A)). Where the alleged interference is attributed to agents of the

Union, as opposed to third parties, the Board determines "whether the conduct has the tendency to interfere with employees' freedom of choice." *Cambridge Tool & Mfg. Co.*, 316 NLRB 716, 716 (1995).

## B. Objection to Alleged Blocking

PruittHealth first asserts that the Board erroneously declined to find that Union agents "engaged in repeated acts of intentional, objectionable blocking of ingress and egress" to the Facility that "interfered with employees' Section 7 rights and was sufficiently objectionable to warrant setting aside the election." Petitioner's Br. 20–21. As support, PruittHealth points to Yolando Thornton's, Erica Merriweather's, and Andrew Johnson's testimony that, in the week before the election, pro-Union demonstrators approached their cars as they were driving into the Facility to distribute flyers and encourage them to vote for the Union. *See id.* at 21–22. The Company also relies on Jan Marie Benn's testimony that she was unable to catch her bus one day when demonstrators were "'swarming' around the bus stop," *id.* at 22–23, as well as Suzanne Gerhardt's testimony that demonstrators obstructed her view of traffic as she was exiting the Facility's premises one afternoon, *id.* at 22.

As an initial matter, we discount PruittHealth's allegations that Benn and Gerhardt were unlawfully blocked because the Company failed to raise these arguments in its request for Board review of the Regional Director's certification decision. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). We find no merit to the objection based on the remaining evidence.

Under Board precedent, unions are permitted to hold demonstrations outside employers' premises and engage with employees on their way to work to peacefully encourage them to support the union and distribute union literature. For example, in *Chrill Care, Inc*., 340 NLRB 1016 (2003), the Board found there to have been no objectionable conduct when union supporters attempted to speak with employees entering the work area and momentarily hindered their access to the building, where there was no evidence of "any forceful or . . . threatening harassing contact," *id.* at 1016; *see also Comcast Cablevision of New Haven, Inc.*, 325 NLRB 833, 833 & n.3, 838 (1998). And in *Firestone Textiles Co*., 244 NLRB 168 (1979), the Board concluded that derogatory comments union supporters made at the entrance to the employer's facility were "regret[t]able" but not coercive under the circumstances, where "the overall conduct" was "generally peaceful" and there was no evidence that employees were prevented from entering or exiting the facility, *id.* at 168, 170–71. There are limits, however. *See, e.g.*, *Local 3, Int'l Bhd. of Elec. Workers*, 312 NLRB 487, 489–90, 492–93 (1993) (finding objectionable conduct where demonstrators yelled, cursed, and threatened individual employees; banged on, and threw pamphlets into, vehicles; and stood in front of vehicles, refusing to step aside).

The Board found that the Union did not exceed the limits of the law in its election campaign activities. It adopted the Hearing Officer's determination that the challenged conduct in this case fell far short of the kind of egregious blocking behavior the Board has deemed objectionable. For example, the Hearing Officer found that "the credited evidence established that individual demonstrators approached cars *from the side* to hand them a flyer, and attempted to persuade them peacefully to support the [Union]." J.A. 241. He further found that "[t]here was no evidence [that] the demonstrators . . . maneuvered in front of cars to intentionally block employees from entering the

facility, nor was there evidence that any employees had trouble entering" the Facility. *Id*. The Regional Director agreed and concluded that the disputed conduct caused, at most, "momentary inconveniences" to employees. J.A. 271.

Substantial evidence supports these determinations. The Hearing Officer found much of the testimony forming the basis of this objection not credible. He declined to credit Thornton's testimony that a demonstrator stood in front of her car because her testimony was "conclusory and contradictory." J.A. 239 n.8. He likewise refused to credit Merriweather's testimony that she was blocked because her testimony was "conclusory, largely devoid of any specifics, contradictory, and confusing." J.A. 240. PruittHealth does not contest these credibility determinations on appeal and we have no basis to doubt their validity. *See Alden Leeds, Inc. v. NLRB*, 812 F.3d 159, 165 (D.C. Cir. 2016) (court accepts credibility findings made by an ALJ and adopted by the Board unless they are shown to be "patently insupportable").

The remaining, credited testimony from Thornton, Johnson, and Merriweather indicates that demonstrators approached employees in a peaceful manner to try to persuade them to vote for the Union, but did not prevent access to the premises. These encounters lasted for at most a few minutes and there is no evidence in the record that the encounters disrupted the Company's operations. In sum, the Board reasonably concluded that there was no merit to the Company's claim that Union supporters interfered with employees' Section 7 rights by blocking access to or from the Facility during the election campaign.

**C. Objection to Alleged Threats**

PruittHealth next attacks the Board's determinations that threats allegedly directed at Thornton and Merriweather did not constitute objectionable conduct. We have no basis to second-guess these determinations because they are supported by substantial evidence and applicable precedent.

As noted above, the Hearing Officer found that Thornton's testimony lacked credibility. He afforded her testimony "little probative weight" because it was elicited from a leading question, and he found the record "devoid of any context to demonstrate that the comment" was actually directed at Thornton. J.A. 242.

Likewise, the Hearing Officer was unpersuaded by Merriweather's testimony because he found it "too unclear" to establish that the four employees who had been standing in the group made a threatening statement. J.A. 243. He instead credited the testimony of one of those four employees, Deidre Ward, who the Hearing Officer found credibly denied hearing anyone make any such statement. The Hearing Officer properly concluded that, even if the statement was made, it was not objectionable under controlling precedent. On this point, the Board has made it clear that in assessing alleged third-party misconduct, an election will be set aside only when the conduct "was so aggravated as to create a general atmosphere of fear and reprisal rendering a free election impossible." *Westwood Horizons Hotel*, 270 NLRB 802, 803 (1984).

We have no grounds to overturn the Board. The findings and conclusions underlying the Board's decision are supported by substantial evidence. Thornton's testimony was less reliable because it was initially procured through a leading question. *See NLRB v. Furnas Elec. Co.*, 463 F.2d 665, 668 (7th Cir.

1972) (deferring to a Board trial examiner's decision to accord limited probative weight to testimony that "resulted from the propounding of leading questions requiring little more than a 'yes' or 'no' answer"). And the circumstances surrounding the alleged threat suggested that it was not directed at Thornton: it was a remark made by an individual in a crowd of noisy demonstrators standing several feet away from Thornton's vehicle. Merriweather's testimony was similarly unconvincing. She characterized the group's conversation as "kind of like a debate about the Union – yes or no for the Union," J.A. 87–88, and stated that the employees were talking in a "little huddle" about twenty feet away, J.A. 114–15. All of this suggests the employees were talking amongst themselves rather than directing threats toward Merriweather or any other employee.

As we have previously made clear, this court does not overturn "Board-approved credibility determinations" unless they are "hopelessly incredible," "self-contradictory," or "patently insupportable." *Capital Cleaning Contractors, Inc. v. NLRB*, 147 F.3d 999, 1004 (D.C. Cir. 1998) (citations omitted). We are "hard-pressed to imagine *any* legitimate basis for the Company's petition for review" challenging the Board's credibility determinations in this case. *E.N. Bisso & Son, Inc. v. NLRB*, 84 F.3d 1443, 1445 (D.C. Cir. 1996). Counsel for PruittHealth was asked at oral argument whether he had found any case to support the Company's request that we overturn the Board's credibility determinations, to which he responded he had not. *See* Oral Arg. Recording at 6:39–7:12. On the record before us, we find that the Company's challenge "is at best specious" and "border[s] on frivolous." *E.N. Bisso & Son*, 84 F.3d at 1445; *see also Cadbury Beverages, Inc. v. NLRB*, 160 F.3d 24, 28 (D.C. Cir. 1998).

We also reject PruittHealth's contention that the Regional Director and Hearing Officer failed to properly consider the

"significant impact" the alleged threats had on Thornton and Merriweather. *See* Petitioner's Br. 28–30; *see id.* at 29 (noting that Thornton testified that she changed her vote because of the Union's conduct, and that Merriweather testified that she was so frightened by the statement she overheard that she submitted a letter of resignation – although she later retracted it). The Board applies an objective test to determine "whether the alleged misconduct is of a type that would cause interference with the free choice of a reasonable employee." *AOTOP, LLC v. NLRB*, 331 F.3d 100, 104 (D.C. Cir. 2003). "[T]he subjective reactions of employees are irrelevant to the question of whether there was in fact objectionable conduct." *Lake Mary Health Care Assocs., LLC*, 345 NLRB 544, 545 (2005). When the disputed conduct involves an alleged threatening remark, "[t]he test is *not* the actual intent of the speaker or the actual effect on the listener," but "whether [the] remark can reasonably be interpreted by an employee as a threat." *Smithers Tire & Auto. Testing of Texas, Inc*., 308 NLRB 72, 72 (1992).

On this record, the Board properly concluded that a reasonable employee would not have interpreted the statements Thornton and Merriweather heard as threats of reprisal, directed at them, for non-support of the Union. The Board's decision rejecting these claims was supported by substantial evidence and is well within the bounds of established precedent.

## D. Objection to Alleged Photographing

PruittHealth additionally contends that the Board erred in failing to credit its unlawful photographing objection. This claim is not properly before us, however, because PruittHealth failed to properly raise it with the Board.

Section 10(e) of the Act provides that "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). The Board's regulations interpreting Section 10(e) require parties to raise objections in their request for Board review of the underlying representation proceedings in order to preserve the issues for consideration in subsequent unfair labor practice proceedings. *See* 29 C.F.R. § 102.67(g); *see also Matson Terminals, Inc*., 361 NLRB No. 50, slip op. at 1 n.1 (Sept. 26, 2014), *enforced*, 637 F. App'x 609 (D.C. Cir. 2016) (per curiam). If a party fails to raise an objection "in the time and manner that the Board's regulations require," this court lacks jurisdiction to consider the claim. *Spectrum Health–Kent Cmty. Campus v. NLRB*, 647 F.3d 341, 349 (D.C. Cir. 2011).

Here, although PruittHealth raised its objection to alleged photographing in its initial objections to the election, it failed to include this objection in its request for Board review. PruittHealth therefore waived this objection. *See* 29 C.F.R. § 102.46(a)(1)(ii) ("Any exception to a ruling, finding, conclusion, or recommendation which is not specifically urged will be deemed to have been waived.").

PruittHealth contends that it preserved this claim by objecting, in its exceptions to the Hearing Officer's report, to the "totality of the Hearing Officer's conclusions," including findings regarding conduct that involved "menacing eligible voters." Petitioner's Reply Br. 19. This argument lacks merit because it merely states a "generalized objection" to the Hearing Officer's analysis "without providing the detail required by the Board's rules or otherwise putting the Board on notice of the specific grounds for its objection[]." *Nova Se. Univ. v. NLRB*, 807 F.3d 308, 313 (D.C. Cir. 2015); *see also*

29 C.F.R. § 102.46(a)(1)(i) (requiring that parties "[s]pecify the questions of procedure, fact, law, or policy to which exception is taken" and "[c]oncisely state the grounds for the exception"). PruittHealth's unspecified, generalized exception to the "totality of the Hearing Officer's conclusions" was insufficient to preserve its objection to allegedly objectionable photographing. Accordingly, Section 10(e)'s jurisdictional bar applies here.

### E. Cumulative Impact and Closeness of the Election

PruittHealth raises two additional arguments as to why the Board erred in adopting the Regional Director's findings and recommendations and certifying the Union. Neither argument has merit.

First, the Company asserts that the Regional Director and Hearing Officer analyzed each allegation of objectionable conduct in isolation rather than, as Board law requires, cumulatively to determine whether the conduct as a whole destroyed the conditions required for a free and fair election. *See* Petitioner's Br. 41–42; Petitioner's Reply Br. 24–26. It is true that the Board is required to assess the cumulative impact of alleged incidents of misconduct in order to determine whether such conduct tainted the results of the election. *See Swing Staging, Inc. v. NLRB*, 994 F.2d 859, 863 (D.C. Cir. 1993). However, in order to make that "overall judgment," the Board first reviews and weighs the seriousness of the specific incidents of alleged misconduct. *See Amalgamated Clothing & Textile Workers Union v. NLRB*, 736 F.2d 1559, 1569 (D.C. Cir. 1984). The Hearing Officer and Regional Director here did just that.

The Hearing Officer stated at the outset of his report that he had assessed the "conduct alleged in the Objections . . . , both

in isolation and cumulatively." J.A. 237. And the Regional Director explained in his decision that "the question which must be asked [in determining whether to set aside the election results] is whether based on the objective evidence . . . the alleged objectionable conduct can be reasonably said to have affected the outcome of the election." J.A. 273. He then held that, "[b]ased on the record [in this case], I do not believe it can be." *Id.* This determination is unassailable.

As we have explained before, a petitioner may not use a cumulative-impact argument "to turn a number of insubstantial objections to an election into a serious challenge." *Amalgamated Clothing & Textile Workers Union*, 736 F.2d at 1569 (quoting *NLRB v. Van Gorp Corp.*, 615 F.2d 759, 765 (8th Cir. 1980)). Zero plus zero equals nothing. That is what we have here.

Second, PruittHealth argues that the Regional Director gave "[in]sufficient consideration to the number of employees impacted by the objectionable conduct and the closeness of the election results." Petitioner's Br. 41. The Regional Director found that the close vote here did not warrant setting aside the election results because the record did not support PruittHealth's contention that the Union engaged in misconduct during the election campaign. Therefore, the Board's determination that misconduct did not taint the election can hardly be doubted.

A close election result may or may not be caused by Union misconduct. If there has been no misconduct, however, then a close vote is simply an indication of divided views among the employees. Therefore, a close vote, without more, is insufficient to require the rerun of an election. Indeed, any suggestion to the contrary is specious. The Union garnered a majority of the votes in the election, and the Board found that

the allegations of objectionable conduct were meritless. That is the end of the matter. Accordingly, we decline to overturn the Board's decision to certify the Union as the lawful bargaining representative.

## III. CONCLUSION

For the reasons set forth in the foregoing opinion, we deny PruittHealth's petition for review, and we grant the Board's cross-application for enforcement.

*So ordered.*