# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 20-1435**

**September Term, 2021**

FILED ON: NOVEMBER 30, 2021

GADECATUR SNF LLC, D/B/A EAST LAKE ARBOR,
        PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
        RESPONDENT

THE RETAIL, WHOLESALE AND DEPARTMENT STORE UNION-SOUTHEAST COUNCIL,
        INTERVENOR

---

Consolidated with 20-1438

---

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

---

Before: ROGERS, MILLETT and PILLARD, *Circuit Judges*

## J U D G M E N T

The court considered this petition for review and cross-application for enforcement on the record from the National Labor Relations Board (Board) and on the briefs filed by the parties. *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j). The court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is hereby

**ORDERED AND ADJUDGED** that the petition for review be **DENIED** and the Board's cross-application for enforcement be **GRANTED**.

GADecatur SNF LLC d/b/a East Lake Arbor (GADecatur) operates a skilled nursing facility in Georgia. On November 12, 2019, a Board-supervised, secret-ballot election took place at the facility to determine whether the Retail, Wholesale and Department Store Union-Southeast

Council (the Union) would represent a bargaining unit of 48 nursing, activity, and maintenance staff members. The election took place in a pair of two-hour polling sessions, one in the morning and one in the afternoon. Approximately fifteen minutes before the end of the afternoon session, Tabatha Martin, an employee who GADecatur had discharged days before the election, arrived at the facility to vote. Martin's termination was the subject of a then-pending unfair labor practice charge. Hearing Officer Report 3, A. 99; Regional Director Decision 3 n.2, A. 107 n.2. Because the charge remained under investigation, Martin was legally entitled to vote subject to challenge. Hearing Officer Report 3 n.3, A. 99 n.3; *see, e.g., F.L. Smithe Mach. Co.*, 305 N.L.R.B. 1082 (1992) (affirming that unlawfully discharged employees' challenged votes should be opened and counted); *Ace Letter Serv. Co.*, 187 N.L.R.B. 581, 581 (1970) (holding that "[t]he Board's challenge procedure generally guarantees the right to every individual who asserts other than a totally frivolous claim to employee status to appear at the polls and cast a ballot" subject to the Board's resolution of an employer's challenge, and "[t]he Employer, by usurping the Board's authority to make that determination, interfered with our orderly election processes"); *see also* 29 C.F.R. § 102.64 (2020) (providing that the Regional Director ordinarily determines voter eligibility before the election, but that parties may agree to defer resolution of such disputes by permitting "disputed employees to vote subject to challenge").

The facility's administrator, Lesly Gervil, and GADecatur's attorney, John Chobor, nonetheless barred Martin from voting and turned her away from the facility. Martin returned about ten minutes later, accompanied by four Union representatives, in another attempt to cast her vote. A GADecatur employee admitted them through the facility's locked door. An argument ensued between the parties over Martin's voter eligibility. Gervil and Chobor demanded that Martin and the Union representatives leave or they would call the police; the Union demanded that Martin be allowed to vote. Representatives on both sides raised their voices, and the arguing people "drifted down" the facility's hallway from the reception desk to just outside of the voting room. Hearing Officer Report 4, A. 100; Regional Director Decision 3, A. 107. The entire dispute lasted about five minutes, until the end of the election, at which point Gervil and Chobor agreed to let Martin vote subject to challenge. The final vote tally was close: The Union won by five votes, five employees did not vote, and there were four challenged ballots, including Martin's.

GADecatur objected to the election. A Hearing Officer conducted an evidentiary hearing and recommended upholding the election after finding that the Union's conduct "did not reasonably tend to interfere with voters' free choice." Hearing Officer Report 5, A. 101; *accord* 7, A. 103. The Acting Regional Director agreed and thus certified the Union as the representative of the appropriate bargaining unit. Regional Director Decision 8-9, A. 112-13. The Board affirmed. When GADecatur then refused to bargain with the Union, the Board's General Counsel filed an unfair labor practice complaint. The Board granted summary judgment in favor of the Union. GADecatur timely petitioned this court for review and the Board cross-petitioned for enforcement of its order. *See* 29 U.S.C. § 160 (e), (f).

* * *

The Board has discretion in reviewing elections, and our court overturns Board decisions only in "the rarest of circumstances." *Am. Bottling Co. v. NLRB*, 992 F.3d 1129, 1140 (D.C. Cir. 2021) (quoting *N. of Market Senior Servs., Inc. v. NLRB*, 204 F.3d 1163, 1167 (D.C. Cir. 2000)). "We will uphold the Board's decision unless it acted arbitrarily or otherwise erred in applying established law to the facts at issue, or if its findings are not supported by substantial evidence." *PruittHealth-Virginia Park, LLC v. NLRB*, 888 F.3d 1285, 1292 (D.C. Cir. 2018) (internal quotation marks and citations omitted). Elections must maintain laboratory conditions as nearly as possible to determine employees' "uninhibited desires" regarding their representation. *Amalgamated Clothing & Textile Workers Union v. NLRB*, 736 F.2d 1559, 1562 (D.C. Cir. 1984); *see also PruittHealth*, 888 F.3d at 1292. Neither party may "interfere with, restrain, or coerce employees" in a way that "has the tendency to interfere with employees' freedom of choice." *PruittHealth*, 888 F.3d at 1292 (citations omitted); *see also Cambridge Tool & Mfg. Co.*, 316 N.L.R.B. 716, 716 (1995). "[T]he party challenging the results of a Board-certified election . . . carries a heavy burden of showing the election's invalidity." *Antelope Valley Bus Co., Inc. v. NLRB*, 275 F.3d 1089, 1095 (D.C. Cir. 2002) (internal quotation marks and citations omitted).

In deciding whether objected-to conduct tended to interfere with employees' free choice, the Board balances several objective factors:

> (1) the number of incidents; (2) the severity of the incidents and whether they were likely to cause fear among the employees in the bargaining unit; (3) the number of employees in the bargaining unit subjected to the misconduct; (4) the proximity of the misconduct to the election; (5) the degree to which the misconduct persists in the minds of the bargaining unit employees; (6) the extent of dissemination of the misconduct among the bargaining unit employees; (7) the effect, if any, of misconduct by the opposing party to cancel out the effects of the original misconduct; (8) the closeness of the final vote; and (9) the degree to which the misconduct can be attributed to the party.

*Taylor Wharton Div. Harsco Corp.*, 336 N.L.R.B. 157, 158 (2001); *see Pac. Coast Sightseeing Tours & Charters, Inc.*, 365 N.L.R.B. No. 131, slip op. at 10 (Sept. 18, 2017); *Cedars-Sinai Med. Ctr.*, 342 N.L.R.B. 596, 597 (2004); *Avis Rent-A-Car Sys., Inc.*, 280 N.L.R.B. 580, 581 (1986).

In the Board's analysis, some factors here plainly favored one side or the other. It reasonably found factor 8, the closeness of the tally, and factor 4, the argument occurring during the election directly outside of the voting room, in GADecatur's favor. Hearing Officer Report 6, A. 102; Regional Director Decision 5-6, A. 109-10. Conversely, the Board weighed in favor of upholding the election result the single argument's brevity (factor 1) and the fact that it occurred at the end of the day after virtually all employees had voted, minimizing any potential effects from persistence in voters' minds (factor 5) or dissemination among unit employees (factor 6). Hearing Officer Report 6, A. 102; Regional Director Decision 4, A. 108.

3

Regarding factor 2, GADecatur insists that the "loud, public argument" was sufficiently "fear-inducing" to "disincline[]" potential voters to "enter the fray if another potential voter's eligibility was being questioned in a loud and hostile manner." GADecatur Br. at 19. But the Board reasonably concluded that the hallway dispute concerned a narrow issue involving only one person, and was thus unlikely to affect the voting unit. Hearing Officer Report 5, A. 101 ("[A]n argument between the parties regarding whether a discharged employee is allowed to vote is unlikely to cause fear among employees in the voting unit."); Regional Director Decision 4, A. 108. GADecatur objected that Martin had "engaged in an outburst" that "intimidated other eligible voters and destroyed the laboratory conditions requisite to a free and fair election." GADecatur Br. at 9 n.3. Yet the Hearing Officer found that the employer's representatives similarly raised their voices during the argument. Hearing Officer 4, A. 100; *see* Regional Director Decision 8, A. 112.

GADecatur emphasizes that many employees saw the dispute and understood it to show GADecatur powerless in the face of the Union (factor 3). GADecatur Br. at 24-26. But the Board permissibly found the record showed otherwise. GADecatur highlights Gervil's testimony before the Hearing Officer that employees witnessed the argument so votes might have been affected. But in testimony the Board found "vague" and lacking credibility—a determination to which we defer, *see PruittHealth*, 888 F.3d at 1294—Gervil could not say if or how many eligible voters were present. Regional Director Decision 4, 6-7, A. 108, 110-11. Both Gervil and Martin testified that they did not see anyone enter, leave, or approach the voting room during the dispute. The Hearing Officer ultimately found that there "was no testimony or evidence presented that any eligible voter was unable to vote or intimidated away from voting due to the alter[c]ation between the parties." Hearing Officer Report 6, A. 102.

GADecatur also contends that Martin and the Union representatives were trespassers whose refusal to leave the premises created the appearance that the employer was powerless to protect its own legal prerogatives. But the finding that GADecatur unlocked the facility's door and permitted the Union entry undercuts its trespass claim. Hearing Officer Report 4, A. 100; Regional Director Decision 3, A. 107; *see* Gervil Testimony 33:6-23, A. 38. And GADecatur itself engaged in misconduct: Its representatives attempted to block Martin from the polls despite her right to cast a ballot subject to challenge. GADecatur's choice to engage in a verbal and physical standoff during the election rather than to quietly allow Martin to vote subject to challenge was at least partly to blame: As the Hearing Officer found, it was "unlikely that the altercation would have happened at all if the Employer had allowed the eligible voter access to the polling location in order to vote" while still preserving its objection. Hearing Officer 6, A. 102; *see also* Regional Director Decision 8, A. 112 ("[I]t is not immaterial that the altercation was partially caused by the Employer's refusal to allow an eligible voter to vote."). It was thus reasonable for the Board to treat the election result as unaffected by *Avis* factors 7 and 9.

In sum, the Hearing Officer considered the "limited duration" of the dispute involving only one voter's eligibility, the lack of any trespass or other unlawful action, the engagement of both parties in the potentially disruptive behavior, and the small-if-unknown number of unit employees aware of or affected by the argument. Hearing Officer Report 5-6, A. 101-02; Regional Director Decision 1, 4-5, A. 105, 108-09. Weighed against the close vote count and the incident occurring

4

during the election, the Hearing Officer reasonably held that the Union's conduct "did not reasonably tend to interfere with the voters' free choice in the election." Hearing Officer Report 5, A. 101; *accord* Report 7, A. 103; *see also* Regional Director Decision 8-9, A. 112-13.

GADecatur nonetheless argues that three cases should have dictated a ruling in its favor: *Nathan Katz Realty, LLC v. NLRB*, 251 F.3d 981 (D.C. Cir. 2001); *Electric Hose & Rubber Co.*, 262 N.L.R.B. 186 (1982); and *Performance Measurements Co.*, 148 N.L.R.B. 1657 (1964). But, as the Board held, "in those cases the party representative(s) were near the entrance to the voting area for most, if not all, of the voting session." Hearing Officer Report 6, A. 102; *see also* Regional Director Decision 8, A. 112. This court explained in *Nathan Katz Realty* that "*Electric Hose* and *Performance Measurements* seem to stand for the proposition that a party engages in objectionable conduct sufficient to set aside an election if one of its agents is *continually* present in a place where employees have to pass in order to vote." 251 F.3d at 993 (emphasis added). In *Nathan Katz*, we vacated the Board's decision because "during the election two Union agents were in a car parked within twenty feet of" the side door of a church in which the voting was taking place, and within a "25-yard no-electioneering zone." *Id.* at 991. The Union agents "motioned, gestured, and honked at the employees as they passed the car." *Id.* The Union's conduct was continuous, and the employer engaged in no counterbalancing misconduct. We find those decisions readily distinguishable from this case.

At bottom, GADecatur's claim rests on an attenuated chain of inferences that (1) the five employees who decided not to vote were planning to do so during the last five minutes of the election, (2) they actually witnessed the argument over Martin's right to vote, and (3) they were deterred from voting because they were intimidated by the Union's role in arguing with GADecatur for Martin's right to cast a vote subject to challenge. Substantial evidence supports the Board's decision not to rely on a series of inferences lacking support. Given the tenuous character of GADecatur's challenge and the great deference we owe the Board's well-supported findings, we reject the petition as baseless.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

## Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY:  /s/
Daniel J. Reidy
Deputy Clerk