# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 14, 2023           Decided June 13, 2023

No. 22-1262

LONGMONT UNITED HOSPITAL,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

NATIONAL NURSES ORGANIZING COMMITTEE/NATIONAL
NURSES UNITED,
INTERVENOR

———

Consolidated with 22-1285

———

On Petition for Review and Cross-Application for
Enforcement of an Order of the National Labor Relations
Board

———

*Patrick R. Scully* argued the cause for petitioner. With him
on the briefs were *Heather F. Vickles* and *John T. Melcon.*

*Mark Kaltenbach*, Attorney, National Labor Relations
Board, argued the cause for respondent. With him on the brief

were *Jennifer A. Abruzzo*, General Counsel, *Peter Sung Ohr*, Deputy General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *David Habenstreit*, Assistant General Counsel, and *Usha Dheenan*, Supervisory Attorney.

Before: HENDERSON, KATSAS and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Longmont United Hospital (Longmont) petitions for review of the decision of the National Labor Relations Board (NLRB or Board), concluding that Longmont violated the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with the National Nurses Organizing Committee/National Nurses United, AFL-CIO (Union). Longmont does not dispute that it refused to bargain with the Union. Instead, it challenges the representation election whereby a group of registered nurses at Longmont elected the Union as its exclusive collective bargaining representative. Because Longmont's objections lack merit, we deny its petition for review and grant the Board's cross-application for enforcement.

**I.**

In 2021, the Union petitioned the NLRB to represent a group of registered nurses at Longmont and the Board conducted an election by mail. As the Board collected and tallied the mail-in ballots, Longmont and the Union both challenged several of them, including Longmont's challenge to a ballot cast by Mysti Schalamon, a registered nurse at the facility. Longmont claims that Schalamon's ballot should not be counted because she failed to "sign" the outer envelope in accordance with the Board's requirements for an election by mail. *See* NAT'L LAB. RELS. BD., CASEHANDLING MANUAL,

PART TWO: REPRESENTATION PROCEEDINGS § 11336.5(c) (2020) (ballots void when "returned in envelopes with no signatures or with names printed rather than signed").

Longmont also timely objected to the election, arguing that the Union engaged in ballot solicitation and that, as a result, the Board should set aside the election. In its offer of proof, Longmont submitted a screenshot of a text message allegedly sent to voting employees, with an image of a signed ballot envelope attached. Longmont asserts that the message gave employees the false impression that the Union was authorized to collect and inspect ballots. The text message came from an unspecified sender but context suggests that its sender was Kristine Kloster—another registered nurse at Longmont—because her signature appeared on the ballot envelope pictured in the attached image. Longmont sought a hearing to solicit Kloster's testimony about the communications she received from the Union and to confirm the Union's role in the alleged ballot solicitation scheme.

By order, the Board's Regional Director overruled Longmont's ballot solicitation objection and rejected its request for a hearing. In that order, the Regional Director also ruled on some but not all of the parties' outstanding challenges to individual ballots and ordered a revised tally. But after the revised tally, enough challenged ballots remained to affect the outcome of the election. Accordingly, the Regional Director ordered a hearing to determine whether the remaining ballots— including Schalamon's—should be counted.

At the hearing, each party presented evidence and Schalamon testified. Longmont submitted an exhibit with dozens of past signature samples from Schalamon's employment records—signatures resembling, in Schalamon's words, "a little bit of an M with a little squiggly at the end"—

and contrasted those signatures with the marking on her ballot envelope, which contains her first initial and last name. Hearing Tr. 111:7–8 (J.A. 85). The Union submitted its own exhibit with photocopies of Schalamon's driver's license and social security card, two documents with markings similar to the marking on her ballot envelope. Schalamon identified the marking on her driver's license as her signature but explained that her social security card contains only her printed name. Schalamon also testified that her ballot envelope shows her signature and acknowledged that she uses the shorthand signature style that appears on her employment records when she is "in a hurry." *Id.*

The Hearing Officer recommended rejecting Longmont's challenge to Schalamon's ballot. He found Schalamon's testimony credible and concluded that she signed—and did not print—her name on the ballot envelope. The Board's Regional Director agreed and affirmed the Hearing Officer's determinations. Longmont requested review of the Regional Director's decision, which the Board denied. *See* 29 C.F.R. § 102.67(g) (denial of request for review "shall constitute an affirmance of the Regional Director's action"). Schalamon's ballot ultimately provided the deciding vote in the election: the final election tally yielded 94 votes in favor of representation and 93 votes against. The Board then certified the Union's victory.

To obtain judicial review of the representation proceeding, Longmont refused to bargain with the Union and the Regional Director commenced this enforcement proceeding, charging Longmont with unfair labor practices in violation of sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5). Thereafter, the Board's General Counsel moved to transfer the proceeding from an administrative law judge to the Board and for summary

judgment. *See* 29 C.F.R. §§ 102.24(a), 102.50. In her motion, the General Counsel asked the Board to order a make-whole remedy whereby Longmont would compensate the Union for its lost opportunity to bargain during the pendency of the enforcement proceeding. The General Counsel also asked the Board to overrule its longstanding precedent that forecloses the compensatory remedy she sought. *See Ex-Cell-O Corp.*, 185 N.L.R.B. 107, 108–10 (1970) (holding that the Board lacks statutory authority to order compensatory remedies in refusal to bargain cases).

The Board granted the transfer of the enforcement proceeding and the General Counsel's summary judgment motion. The Board declined to reconsider representation issues already decided by the Regional Director, determined that Longmont unlawfully refused to bargain and, as a remedy, ordered Longmont to bargain with the Union. *See Longmont United Hosp.*, 371 N.L.R.B. No. 162, 2022 WL 5148275, at *1–3 (Sept. 30, 2022). But the Board expressly reserved decision on the General Counsel's request for a compensatory remedy, instead severing that issue for future consideration. *Id.* at *3. Longmont timely petitioned for review and the Board cross-applied for enforcement.

## II.

We have jurisdiction to review the petition and cross-application under 29 U.S.C. § 160(e) and (f). Although we do not review the election certification directly, *see, e.g.*, *Alois Box Co. v. NLRB*, 216 F.3d 69, 76 (D.C. Cir. 2000), we may consider representation issues during our review of the Board's final order granting summary judgment in the enforcement proceeding, *see* 29 U.S.C. § 159(d); *Nat'l Hot Rod Ass'n v. NLRB*, 988 F.3d 506, 508 (D.C. Cir. 2021). That the Board severed a remedial issue for future consideration does not

affect our jurisdiction to consider Longmont's petition for review and adjudicate issues that the Board has resolved. *See Stephens Media, LLC v. NLRB*, 677 F.3d 1241, 1250 (D.C. Cir. 2012).

"We will uphold the Board's decisions if they are not arbitrary, capricious, or grounded in legal error, and if substantial evidence supports the Board's factual findings." *RadNet Mgmt., Inc. v. NLRB*, 992 F.3d 1114, 1119 (D.C. Cir. 2021); *see* 29 U.S.C. § 160(f). On representation and election issues, "we accord the Board an especially wide degree of discretion," *800 River Rd. Operating Co. v. NLRB*, 846 F.3d 378, 385–86 (D.C. Cir. 2017) (quoting *Randell Warehouse of Ariz., Inc. v. NLRB*, 252 F.3d 445, 447–48 (D.C. Cir. 2001)), and ask "whether the Board has followed appropriate and fair procedures" and "reached a rational conclusion in addressing any objections to the election," *PruittHealth-Virginia Park, LLC v. NLRB*, 888 F.3d 1285, 1292 (D.C. Cir. 2018) (quoting *Durham Sch. Servs., LP v. NLRB*, 821 F.3d 52, 58 (D.C. Cir. 2016)). We review the Board's grant of summary judgment in the enforcement proceeding for abuse of discretion. *See RadNet*, 992 F.3d at 1128; *Alois Box*, 216 F.3d at 78.

## III.

Longmont presses three objections to the underlying Board proceedings. Two challenge the Regional Director's rulings in the representation proceeding and the third is to the Board's summary judgment grant in the enforcement proceeding.

## A.

First, Longmont claims that the Board abused its discretion in counting Schalamon's ballot. Longmont concedes that Schalamon is eligible to vote and did in fact cast the ballot in

question; instead, it argues that Schalamon failed to "sign" her ballot envelope and therefore her ballot is void. We disagree.

In an election by mail, voting employees must sign the outer return envelope when they mail their completed ballot. Each ballot envelope instructs voters to "Sign Your Name Across the Flap. DO NOT PRINT." *See* Hearing Tr. Emp. Ex. 5 (J.A. 163). Ballots "returned in envelopes with no signatures or with names printed rather than signed" are void. NAT'L LAB. RELS. BD. CASEHANDLING MANUAL, PART TWO: REPRESENTATION PROCEEDINGS § 11336.5(c). The challenger has the burden of establishing that a ballot is void. *See Sweetener Supply Corp.*, 349 N.L.R.B. 1122, 1122 (2007).

The Board's Regional Director overruled Longmont's challenge and concluded that Schalamon signed her name on the ballot envelope. She also determined that Schalamon did not merely print her name on the ballot envelope and found any inconsistency with past signature samples immaterial in the absence of any question as to the voter's identity. The Regional Director relied in part on Schalamon's testimony that she signed the disputed ballot envelope and that she used a different, shorthand signature style when she was "in a hurry." Hearing Tr. 111:7–8 (J.A. 85). At the outset, Longmont contends that the Regional Director erred in considering Schalamon's post-election testimony because such "post hoc testimony" is categorically barred by Board precedent,[1] *see*

---

[1] The Board claims that we lack jurisdiction to consider Longmont's challenge to Schalamon's post-election testimony because Longmont failed to raise that challenge in its request for Board review of the Regional Director's decision. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court" absent "extraordinary circumstances"). We disagree because, in its request for Board review, Longmont disputed the Regional Director's reliance on

Appellant's Br. 23–26, and because her testimony was not credible. Neither contention is persuasive.

The Regional Director did not depart from precedent when she considered Schalamon's post-election testimony. *See Titanium Metals Corp. v. NLRB*, 392 F.3d 439, 446 (D.C. Cir. 2004) (NLRB order "will . . . be set aside when it departs from established precedent without reasoned justification"). Longmont cites a variety of authorities for the proposition that the Board does not consider "postelection statements regarding the intent of voters" in deciding whether to "set[] aside elections or chang[e] the results of secret ballots." *E.g.*, *Dayton Malleable Iron Co.*, 123 N.L.R.B. 1707, 1709 (1959). Longmont equates Schalamon's testimony that she signed her ballot to the post-election statements of voter intent at issue in the cited authorities. But Schalamon did not testify as to her intent and none of Longmont's proffered authorities involves the Board's signature requirement.[2] Because Board precedent

---

"'after-the-fact' evidence" like Schalamon's testimony. *See* Request for Review 12 (J.A. 345). Longmont's request for review is therefore "adequate to put the Board on notice that the issue might be pursued on appeal." *See United Food & Com. Workers Union, Local 400 v. NLRB*, 989 F.3d 1034, 1037 (D.C. Cir. 2021) (quoting *Consol. Freightways v. NLRB*, 669 F.2d 790, 794 (D.C. Cir. 1981)).

[2] *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 606–08 (1969) (testimony regarding whether employee believed he was voting in an election or merely to authorize an election); *Local 153, Int'l Ladies' Garment Workers' Union v. NLRB*, 443 F.2d 667, 668 (D.C. Cir. 1970) (testimony about why employee voted the way he did); *Molded Acoustical Prods., Inc.*, 815 F.2d 934, 940 (3d Cir. 1987) (same); *In re Pea Ridge Iron Ore Co.*, 335 N.L.R.B. 161, 161 (2001) (testimony about why employees chose not to vote); *Dayton*, 123 N.L.R.B. at 1709 (same); *In re Semi-Steel Casting Co.*, 66 NLRB 713, 714–15 (1946) (testimony about what employee intended to vote for because ballot markings were ambiguous);

does not reach Schalamon's testimony, we cannot conclude that the Regional Director acted arbitrarily or capriciously in considering it.

Nor has Longmont shown a basis to disturb the Hearing Officer's credibility findings. "[A] hearing officer's 'credibility determinations may not be overturned absent the most extraordinary circumstances.'" *E.N. Bisso & Son, Inc. v. NLRB*, 84 F.3d 1443, 1444–45 (D.C. Cir. 1996) (quoting *Amalgamated Clothing & Textile Workers Union v. NLRB*, 736 F.2d 1559, 1563 (D.C. Cir. 1984)). Longmont contends that the "incongruent signature exemplars" render Schalamon's testimony incredible, as does her awareness at the time she testified that the election's outcome rested on her ballot. Appellant's Br. 23. Her testimony, however, is consistent with the past exemplars, which were shown to her only after she gave her testimony on that point. And Longmont's generic observation about the circumstances in which the testimony arose "is at best specious" and thus unpersuasive. *PruittHealth-Virginia Park*, 888 F.3d at 1295 (quoting *E.N. Bisso & Son*, 84 F.3d at 1445).[3]

Having concluded that Schalamon's testimony is credible and was properly considered by the Board, we believe that the Board did not abuse its discretion in overruling Longmont's challenge to Schalamon's ballot. Substantial evidence supports

---

*Providence Health & Servs.*, 369 N.L.R.B. No. 78, 2020 WL 2476668, at *1 (2020) (same).

[3] Longmont also attacks Schalamon's credibility based on her testimony about the marking on her social security card. *See* Reply Br. 9. Longmont failed to raise that argument in its opening brief and thus the argument is forfeited. *See Abdullah v. Obama*, 753 F.3d 193, 199–200 (D.C. Cir. 2014); *Nat. Res. Def. Council v. EPA*, 25 F.3d 1063, 1071 n.4 (D.C. Cir. 1994).

the Board's finding that Schalamon did not print her name on her ballot envelope: Schalamon credibly testified that the marking is her signature and the marking's cursive lettering contrasts with record samples of her printed name. Longmont claims that the marking on the ballot envelope cannot satisfy the Board's signature requirement if it does not match other signature samples in the record but it cites no precedent suggesting that is the case—particularly where, as here, there is no dispute as to the voter's identity. *See Coll. Bound Dorchester, Inc.*, N.L.R.B. Case No. 01-RC-261667, 2021 WL 2657318, at \*1 (June 25, 2021) (purpose of signature requirement is to ensure that ballots "can be identified as cast by an eligible employee").

**B.**

Longmont also claims that the Board abused its discretion in overruling its ballot solicitation objection without an evidentiary hearing. But parties objecting to an NLRB election "do not have an automatic 'right to a post-election hearing.'" *Durham Sch. Servs., LP v. NLRB*, 821 F.3d 52, 58 (D.C. Cir. 2016) (quoting *Amalgamated Clothing Workers of Am. v. NLRB*, 424 F.2d 818, 828 (D.C. Cir. 1970)). To secure a hearing, the objecting party must file a written "offer of proof" that "identif[ies] each witness the party would call to testify" and "summariz[es] each witness's testimony." 29 C.F.R. § 102.66(c); *see also id.* § 102.69(a)(8). The Board grants a hearing if the offer of proof supplies "evidence" that "constitute[s] grounds for setting aside the election" once introduced and credited at a hearing. *Id.* § 102.69(c)(1)(i); *see also 800 River Rd. Op. Co.*, 846 F.3d at 387–88. Ballot solicitation warrants setting aside an election only if a determinative number of voters is affected. *See Pro. Transp., Inc.*, 370 N.L.R.B. No. 132, 2021 WL 2658293, at \*5 (June 9, 2021). A party engages in ballot solicitation if he makes a

statement to a voting employee that "could be reasonably interpreted as an offer to collect and mail [the employee's] ballot." *Id.* at *6.

As evidence of ballot solicitation, Longmont submitted a copy of a text message with an attached picture of a ballot envelope signed by Kristine Kloster—another registered nurse at Longmont and the message's likely sender. The message explained that voters must sign "across the flap in order to be counted" and asked the recipient to respond to Kloster with a photo of the ballot before "drop[ping] it in the mail just to verify." Am. Offer of Proof, Ex. A (J.A. 45). The message also stated that "[w]e already have someone reordering a ballot due to [the voter's failure to sign his ballot] but we want to make sure all of our votes count." *Id.*

The message cannot reasonably be interpreted as "an offer to collect and mail" a ballot, *Pro. Transp.*, 2021 WL 2658293, at *6; indeed, it instructs employees to "drop [their ballots] in the mail," Am. Offer of Proof, Ex. A (J.A. 45); *see Pro. Transp.*, 2021 WL 2658293, at *6 n.22 ("offering to assist [employees] with understanding the election instructions" is not ballot solicitation). Although Longmont claims that the message gave employees the false impression that the Union assisted in conducting the election, Longmont supplied no evidence connecting Kristine Kloster with the Union, only "[n]ebulous and declaratory assertions," *Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d 1175, 1182 (D.C. Cir. 2000) (alteration in original) (quoting *Amalgamated Clothing Workers*, 424 F.2d at 828), that Kloster contacted "other voters . . . in connection with the Union's solicitation of ballots." Am. Offer of Proof 2 (J.A. 42).

## C.

Finally, Longmont objects to the Board's summary judgment grant in the enforcement proceeding. *See* 29 C.F.R. § 102.24(b) (Board may grant summary judgment in "the absence of a genuine issue" for hearing); *Alois Box*, 216 F.3d at 78 (whether to grant summary judgment "lies in the Board's discretion"). Longmont's objection is meritless.

Although the Board's General Counsel asked for a compensatory, make-whole remedy that is foreclosed by Board precedent, *see Ex-Cell-O Corp.*, 185 N.L.R.B. at 110, the Board granted summary judgment with limited relief: it ordered Longmont to recognize the Union as the registered nurses' collective bargaining representative, to cease and desist in its refusal to bargain and to begin bargaining with the Union. The Board did not rule on the General Counsel's request for a compensatory remedy; instead, it severed that issue for later consideration, as it has done in other cases raising the same issue. *Longmont United Hosp.*, 2022 WL 5148275, at *3; *see also, e.g.*, *Siren Retail Corp.*, 372 N.L.R.B. No. 10, 2022 WL 17401641, at *3 (Nov. 30, 2022); *Arrmaz Prods., Inc.*, 372 N.L.R.B. No. 12, 2022 WL 17820769, at *3 (Dec. 6, 2022).

Longmont did not (and does not) dispute that it refused to bargain with the Union. The Board's summary judgment grant thus involved only one disputed issue: whether the Union was properly certified as the nurses' collective bargaining representative. *See NCR Corp. v. NLRB*, 840 F.3d 838, 841 (D.C. Cir. 2016) (if employer "admit[s] it refused to bargain with the union" and "the union was properly certified," the Board's refusal to bargain finding "is supported by substantial evidence" (quoting *NLRB v. Pinkerton's, Inc.*, 621 F.2d 1332, 1325 (6th Cir. 1980))). The Board, however, correctly declined

to relitigate issues in the enforcement proceeding that had been decided in the representation proceeding. *See* 29 C.F.R. § 102.67(g) (denial of request for review in representation proceeding "preclude[s]" relitigation of representation issues "in any related subsequent unfair labor practice proceeding"); *RadNet*, 992 F.3d at 1128 (recognizing the Board's "'well[]settled' rule that, 'in the absence of newly discovered or previously unavailable evidence, the Board will not relitigate in a subsequent refusal-to-bargain proceeding matters which have been disposed of in a prior related representation case'" (quoting *Pepsi-Cola Buffalo Bottling Co.*, 171 N.L.R.B. 157, 158 (1968) (alteration in original))). In the absence of other disputed issues, the Board did not abuse its discretion in granting summary judgment.

Longmont resists that conclusion, asserting that the General Counsel's request for a compensatory remedy introduced "disputed allegations about *the future*"—specifically, whether Longmont intended to continue its refusal to bargain until a federal court reviewed the disputed representation issues, presumably affecting the measure of any compensatory damages awarded. *See* Appellant's Br. 30–31 (emphasis in original). But the Board did not adjudicate the General Counsel's request for compensatory relief and, as a result, any challenge to the fact or measure of compensatory damages is premature.

For the foregoing reasons, we deny Longmont's petition for review and grant the Board's cross-application for enforcement.

*So ordered.*