**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-1583, 23-1758, 23-2367, and 23-2561
_____

NATIONAL LABOR RELATIONS BOARD,
　　　　　　　　　　Petitioner in Nos. 23-1583
　　　　　　　　　　and 23-2367

LABORERS INTERNATIONAL UNION OF NORTH
AMERICA LOCAL 57　(Intervenor)

v.

UNITED SCRAP METAL PA, LLC,
　　　　　　　　　　Petitioner in Nos. 23-1758
　　　　　　　　　　and 23-2561
_____

On Applications for Enforcement and Cross-Petitions for
Review
of Orders of the National Labor Relations Board
(NLRB Case Nos. 04-CA-268183, 04-CA-269712,
04-RC-267642, and 04-CA-315904)
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 27, 2024

Before: KRAUSE, RESTREPO, and MATEY, *Circuit Judges*

(Filed: September 16, 2024)
_____

Ruth E. Burdick
Milakshmi V. Rajapakse
David A. Seid
NATIONAL LABOR RELATIONS BOARD
1015 Half Street SE
Washington, D.C. 20570
    *Counsel for Petitioner*

Mark E. Belland
David F. Watkins
O'BRIEN BELLAND & BUSHINSKY
509 S Lenola Road, Bldg. 6
Moorestown, N.J. 08057
    *Counsel for Intervenor*

Christopher J. Murphy
MORGAN LEWIS & BOCKIUS
2222 Market Street
12th Floor
Philadelphia, PA 19103

Kelcey J. Phillips
MORGAN LEWIS & BOCKIUS
1111 Pennsylvania Avenue NW, Ste. 800N
Washington, D.C. 20004
    *Counsel for Respondent*

_____

OPINION OF THE COURT

_____

RESTREPO, *Circuit Judge*.

The National Labor Relations Board ("Board") applies for enforcement of two of its orders, and United Scrap Metal PA, LLC ("USM") cross-petitions for review. In those orders, the Board: (1) found that USM engaged in unfair labor practices during a union organizing campaign and unlawfully changed employees' work schedules shortly after a unit of employees elected Laborers' International Union of North America, Local 57, as its exclusive collective bargaining representative; (2) overruled USM's objections to the election result and certified the union; and (3) found that USM unlawfully refused to bargain with and provide information to Local 57. For the following reasons, we will grant the Board's applications for enforcement and deny USM's cross-petitions for review.

**I.**

The Board had jurisdiction over this matter pursuant to 29 U.S.C. §§ 159(b)–(c) and 29 U.S.C. §§ 160(a)–(c). We have jurisdiction over the Board's applications for enforcement and USM's cross-petitions for review pursuant to 29 U.S.C. § 159(d) and 29 U.S.C. §§ 160(e)–(f).

The Board severed and retained a remedial issue in this case, which raises an issue of first impression for our Court as to the finality of these orders under 29 U.S.C. §§ 160(e)–(f).

Two sister courts have answered this question, holding that the Board's severance of a remedial issue for future consideration "does not affect [a court's] jurisdiction to . . . adjudicate issues that the Board has resolved." *Longmont United Hosp. v. NLRB*, 70 F.4th 573, 578 (D.C. Cir. 2023); *see also NLRB v. Siren Retail Corp.*, 99 F.4th 1118, 1123 (9th Cir. 2024) ("[W]e see no reason to conclude that severing the *Ex-Cell-O* issue from the other issues in the case renders the Board's decision nonfinal."). Agreeing with the reasoning of those courts, we hold that the Board's orders here are final, and that we have jurisdiction, because the issue of whether to adopt a new, additional remedy for refusals to bargain "would [not] have any effect on the Board's conclusion regarding the underlying charge." *Siren Retail Corp.* 99 F.4th at 1123. Instead, the orders represent the "consummation of the agency's decisionmaking process" and are therefore both final and reviewable. *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).

When reviewing orders of the Board, "[w]e 'exercise plenary review over questions of law and the Board's application of legal precepts' and accept the Board's factual determinations if they are 'supported by substantial evidence.'" *New Concepts for Living, Inc. v. NLRB*, 94 F.4th 272, 280 (3d Cir. 2024) (quoting *Spectacor Mgmt. Grp. v. NLRB*, 320 F.3d 385, 390 (3d Cir. 2003)). "Substantial evidence requires 'more than a scintilla[,]' which means such evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (alteration in original) (quoting *Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 606 (3d Cir. 2016)).

**II.**

4

A.

As an initial matter, USM has not challenged the finding made by the administrative law judge ("ALJ") that it violated Section 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), in the lead-up to the election by instructing employees not to accept Local 57's organizing material and by confiscating union shirts. Accordingly, the Board is entitled to summary enforcement of those parts of its February 8, 2023, order. *See, e.g.*, *NLRB v. Konig*, 79 F.3d 354, 356 n.1 (3d Cir. 1996).

Moreover, substantial evidence supports the Board's finding that USM discriminatorily changed its employees' work schedules after the representation election. Section 8(a)(3) of the NLRA prohibits an employer from taking adverse employment action against an employee in retaliation for union membership or activities. 29 U.S.C. § 158(a)(3). To make out a claim under this section, "the employee must establish that the protected conduct was a 'substantial' or 'motivating' factor [for the employer's action]. Once this is accomplished, the burden shifts to the employer to demonstrate that it would have reached the same decision absent the protected conduct." *1621 Route 22 W. Operating Co., LLC v. NLRB*, 825 F.3d 128, 145–46 (3d Cir. 2016) (alteration in original) (quoting *Wright Line, a Div. of Wright Line, Inc.*, 251 NLRB 1083, 1087 (1980)).

It is undisputed that, about one hour after the election results were announced, USM reduced the work hours of the bargaining-unit employees by ending their shifts each weekday at 3:00 p.m. instead of 5:00 p.m. and by eliminating Saturday

overtime shifts. USM also concedes the evidence supports a prima facie showing that the employees were engaging in protected union activity and that USM was aware of and hostile to that activity. The company's main argument is that, regardless of its employees' union activity, it nevertheless would have reduced work hours at that time due to the economic impact of the COVID-19 pandemic—most notably pointing to a November 16, 2020, emergency order from the mayor of Philadelphia (which went into effect the same day as the union election) that extended pandemic-related restrictions on indoor and outdoor gatherings through the new year.

But the Board reasonably found that USM's justifications for eliminating overtime and Saturday shifts at the time it did, even if facially legitimate, were not credible. The company had refrained from cutting hours or overtime for most of the pandemic up to that point (even as business levels dropped), and the mayor's order—which, at the time, was set to last for under two months—did not so drastically alter the state of play that USM inevitably would have made these changes. Moreover, managers at USM were well aware that employees in the bargaining unit were "very concerned about [the] union coming in and how it may [a]ffect their [overtime]," and the leaders discussed threatening the elimination of benefits such as "[c]onsistent overtime opportunities" if the union won the election. J.A. 1632; *see also* 1659 ("All of the aforementioned [including overtime] goes away in a different work environment."). Once the employees voted for union representation, the company immediately changed their work schedule. Accordingly, substantial evidence supports the Board's finding that neither the mayor's order nor the broader circumstances of the COVID-19 pandemic "would have moved [USM] to take the challenged

6

action absent the protected conduct." *Chevron Mining, Inc. v. NLRB*, 684 F.3d 1318, 1327 (D.C. Cir. 2012) (citation omitted).

B.

The Board also acted within its discretion in overruling USM's objections to the election of Local 57 and, in turn, correctly found that USM's refusal to bargain with or provide information to the union violated Sections 8(a)(5) and (1) of the NLRA.[1] "[A]n otherwise valid Board order" certifying the results of a representation election must be enforced unless the employer proves "that there has been prejudice to the fairness of the election." *NLRB v. Mattison Mach. Works*, 365 U.S. 123, 124 (1961). We ask "whether substantial evidence supported the Board's determination that certain allegedly disruptive conduct did not 'destroy[] the laboratory conditions of the election' and 'render[] a free expression of choice of representation impossible.'" *Advanced Disposal Servs. E.*, 820 F.3d at 597 (alterations in original) (quoting *Zeiglers Refuse Collectors, Inc. v. NLRB*, 639 F.2d 1000, 1011 (3d Cir. 1981)).

Only two of USM's objections are before us on appeal.

---

[1] USM concedes that it refused to recognize Local 57 after the election to preserve its challenge to the Board's certification of the union. As such, the parties agree that if Local 57 was properly certified, then USM violated Sections 8(a)(5) and (1) of the NLRA when it, among other things, refused to bargain with the union and changed the employees' work schedules without first providing Local 57 with notice and an opportunity to bargain.

First, USM argues that Osman Rivera Acosta, a pro-union employee, affected the fairness of the election by threatening another employee, Erik Larios, with bodily harm in the presence of several other eligible voters after Mr. Larios voiced support for USM during a company meeting. For one, Mr. Rivera did not have actual or apparent authority to engage in the allegedly objectionable conduct on behalf of Local 57; though he allegedly referred to himself as the union's "*jefe*," J.A. 1239, he never worked for or received payment from Local 57. Thus, his conduct is best understood as a third-party threat because he did not act as an agent of the union. *See Cornell Forge Co.*, 339 NLRB 733, 733–34 (2003); *cf. Conway Freight, Inc. v. NLRB*, 838 F.3d 534, 538 (5th Cir. 2016) ("In any union election, it is very likely that pro-union employees will make concerted efforts to persuade their colleagues. Such attempts at persuasion do not make employees agents of a union."). Additionally, even assuming that Mr. Rivera's threat to Mr. Larios was grounded in his support for Local 57,[2] USM failed to show that anyone besides Mr. Larios and one other employee heard the threat and that the threat was disseminated. Accordingly, we cannot conclude that Mr. Rivera's alleged conduct "'create[d] a general atmosphere of fear and reprisal rendering a free election impossible.'" *Advanced Disposal Servs. E.*, 820 F.3d at 608 n.13 (quoting *Robert Orr-Sysco Food Servs., LLC*, 338 NLRB 614, 615 (2002)).

Second, USM maintains that a group of Local 57 representatives photographed USM employees who refused to

---

[2] Notably, the Board found it "difficult to even decipher whether [Mr. Rivera's] threat to [Mr.] Larios was based upon [u]nion support or general animosity." J.A. 11.

8

stop their cars to interact with them as they distributed union literature outside the company's Philadelphia facility. The parties disagree as to whether this occurred, but the ALJ ultimately credited testimony from two Local 57 representatives present in the group that day, both of whom denied that the group photographed anyone. The ALJ regarded the Local 57 agents as "strong and believable witnesses," J.A. 12, and the Board affirmed the ALJ's factual finding on that basis. We give the Board's credibility determinations "great deference" and do not disturb them "in the absence of any evidence indicating otherwise." *Atl. Limousine, Inc. v. NLRB*, 243 F.3d 711, 718–19 (3d Cir. 2001) (quoting *NLRB v. Lee Hotel Corp.*, 13 F.3d 1347, 1351 (9th Cir. 1994)). USM has not demonstrated why either the Board or the ALJ erred in crediting the union agents' testimony over that of its own witnesses, so we see no basis to depart from that conclusion.[3]

## III.

For these reasons, we will grant the Board's applications for enforcement and deny USM's cross-petitions for review.

---

[3] USM argues that we should reject this credibility determination because the ALJ "did not adequately explain the basis for his credibility assessments." USM Opening Br. 31. But "[i]t is well established that explicit credibility findings are unnecessary when a judge has 'implicitly resolved conflicts in the testimony by accepting and relying on the testimony of [one party's] witnesses.'" *Am. Coal Co.*, 337 NLRB 1044, 1044 n.2 (2002) (quoting *Electri-Flex Co. v. NLRB*, 570 F.2d 1327, 1331 (7th Cir. 1978)).