# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 27, 2024      Decided December 17, 2024

No. 23-1281

VTCU CORP.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 23-1318

———

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

———

*Andrew S. Goldberg* argued the cause and filed the briefs for petitioner.

*Barbara A. Sheehy*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Jennifer A. Abruzzo*, General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *David Habenstreit*,

Assistant General Counsel, and *Usha Dheenan*, Supervisory Attorney.

Before: RAO and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Petitioner VTCU Corp. ("VTCU"), a manufacturer of electrical transformers, challenges the results of a mail ballot representation election conducted by the National Labor Relations Board ("Board" or "NLRB"). The International Union of Operating Engineers, Local 302 ("Union") prevailed by 21 votes in the election. VTCU objected to the results, claiming that the Board's Region 27 Office and the Union had engaged in misconduct during the election. Specifically, VTCU alleged that the Regional Office, *inter alia*, had not afforded sufficient time for employees to vote, failed to provide ballots to several eligible voters, and counted void ballots. VTCU also claimed that Union agents had threatened and intimidated employees. VTCU requested that the election be overturned or, in the alternative, that the Regional Director hold an evidentiary hearing.

The Regional Director found no merit in VTCU's claims, overruled the objections without a hearing, and certified the Union as the employees' exclusive bargaining representative. The Regional Director also found that many of VTCU's objections were untimely, unsupported, or refuted by the facts uncovered by an administrative investigation conducted by the Regional Director. In addition, the Regional Director concluded that the Regional Office's conduct comported with the Board's Casehandling Manual, the parties' Stipulated Election Agreement ("Agreement"), and Board precedent.

After the Board denied VTCU's request for review of the Regional Director's decision, VTCU refused to bargain with the Union. The Board's General Counsel then issued a complaint alleging that VTCU's refusal to bargain violated the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. § 151 *et seq.* In its review of the matter, the Board concluded that VTCU had indeed committed unfair labor practices in violation of sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1), (5), and ordered VTCU to recognize and bargain with the Union. *See VTCU Corp.*, 372 N.L.R.B. No. 148, slip op. at 1-2 (Sept. 28, 2023). VTCU now petitions for review of the Board's order and the Board cross-applies for enforcement.

In its petition for review, VTCU argues that the Board erred in rejecting its objections by deviating from Board precedent. VTCU principally contends that the Union's misconduct and the Regional Office's mishandling of the election warranted a rerun election because an outcome-determinative number of voters were possibly disenfranchised. VTCU further claims that the Board erred in denying its requests for an extension of time to submit an offer of proof and for a post-election hearing.

We find no merit in VTCU's claims. The Board's decision is consistent with applicable law and supported by established precedent. Furthermore, we lack jurisdiction to consider a number of VTCU's claims due to its failure to raise these matters with the Board during the representation proceedings. We also find that VTCU forfeited other objections by failing to properly raise the issues in its opening brief to this court. Therefore, we deny VTCU's petition for review and grant the Board's cross-petition for enforcement of its order.

4

## I. BACKGROUND

### A. *Statutory Background*

The National Labor Relations Act safeguards the rights of employees to "self-organiz[e], to form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. To this end, the Act prohibits employers from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of" those rights. *Id.* § 158(a)(1). It also forbids employers from refusing to bargain collectively with their employees' representatives. *Id.* § 158(a)(5). Section 9(a) of the Act further provides that representatives selected for collective bargaining purposes "by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining." *Id.* § 159(a).

### B. *Factual and Procedural Background*

VTCU operates a production plant for the manufacture of electrical transformers in Pocatello, Idaho. On August 1, 2022, the Union filed a petition with the Board to represent a bargaining unit of full-time and regular part-time production and maintenance employees at the Pocatello facility. Pursuant to an Agreement, VTCU and the Union waived their rights to a pre-election hearing and consented to a mail ballot election to be conducted from September 7 to September 28. The Agreement also directed voters who had not received their ballots by September 14, or who otherwise needed a duplicate ballot, to contact the Regional Office to arrange for the mailing of another ballot. Further, the Agreement required VTCU to post copies of the Notice of Election at the Pocatello facility. The Notice of Election likewise instructed employees to

contact the Regional Office or the Board's national hotline if they had not received a ballot by September 14.

There were 186 employees who were eligible to vote in the election. The Union won by a vote of 66 to 45. There were seven void ballots and five challenged ballots.

On October 5, VTCU filed objections to the election with the Regional Director, claiming that the Union had destroyed the requisite laboratory conditions for a fair election and that the Regional Office had mishandled the election. Specifically, in its first and second objections, VTCU alleged that the Union threatened employees regarding their immigration status so as to coerce them to vote for the Union or dissuade them from voting. In its third objection, VTCU contended that the Regional Office: (a) conducted an election with inadequate time for voters to request duplicate ballots, in light of widespread postal service delays; (b) failed to mail ballots to 25 eligible voters; (c) mailed ballots to employees not on the voter list; (d) failed to respond to telephonic requests from employees for original and duplicate ballots; (e) counted legally void ballots; and (f) counted ballots of employees who claimed that they never received ballots or voted. VTCU thus argued that the election results should be overturned. Alternatively, it requested an evidentiary hearing on its objections.

On that same day, VTCU requested an extension of time to October 12 to submit an offer of proof in support of its objections. After the Regional Director granted this extension, VTCU requested a second extension to October 14, but the Regional Director denied this request. As a result, VTCU filed an initial offer of proof on October 12 and then an unauthorized supplemental offer of proof on October 14.

VTCU's initial offer of proof provided the names of 17 employees (actually, the number is 16, not 17, because VTCU double-counts one voter) who claimed that they never received or did not timely receive a ballot, two employees who asserted that they called the Regional Office to request ballots but never received a response, and four employees who stated that their ballots were not counted. In addition, VTCU listed the names of six voters whose ballots were counted, despite an alleged lack of a signature on their ballot envelopes. The offer of proof also included new allegations that Union agents intimidated and harassed three employees by, *inter alia*, refusing to leave an employee's property, videotaping an employee, sending offensive text messages to an employee, and repeatedly offering to assist an employee with casting a ballot.

In December 2022, the Regional Director overruled VTCU's objections and certified the Union as the employees' exclusive bargaining representative. First, she determined that VTCU's evidence was insufficient to warrant an evidentiary hearing. As to Objections 1 and 2, she concluded that the record was devoid of evidence to support VTCU's claim that the Union threatened employees regarding their immigration status. She found that the other allegations concerning the Union's misconduct were untimely because they were not first raised in the objections and VTCU failed to show that the evidence was newly discovered and previously unavailable.

As to Objection 3(a), the Regional Director pointed out that the parties had consented to a three-week polling period and concluded that this had afforded sufficient time to conduct a fair election. The Regional Director rejected as meritless VTCU's claim that a 66 percent voter turnout or a late-arriving ballot signified that employees lacked an adequate opportunity to vote.

For Objection 3(b), the Regional Director dismissed VTCU's claim that the Regional Office had neglected to mail ballots to 16 eligible voters. In particular, she explained that their investigation revealed that one employee had actually voted and that the other employees had not contacted the Regional Office to request a duplicate ballot.

As to Objection 3(c), the Regional Director determined that the Regional Office's mailing of ballots to four voters not on the voter list conformed with the Board's Casehandling Manual, which requires the Regional Office to send ballots to prospective voters who request them. In any event, she noted that those ballots were never counted due to lateness or other challenges.

With respect to Objection 3(d), the Regional Director concluded that the Regional Office did not fail to respond to telephonic requests for duplicate ballots from two employees. Instead, she found that the investigation showed that Voter No. 185 timely voted, though his ballot was challenged by the Board Agent for separate eligibility reasons, and that there were no records of Voter No. 46 contacting the Regional Office. Further, she observed that any failure to provide Voter No. 46 with a duplicate ballot would not have been outcome determinative given the Union's margin of victory.

As to Objection 3(e), the Regional Director found that the Regional Office complied with the Board's Casehandling Manual by counting the six ballots with printed signatures, pursuant to the parties' agreement to count them. For Objection 3(f), she determined that VTCU offered no evidence that the Regional Office counted ballots of employees who claimed that they never voted. Finally, she rejected VTCU's claim that the Regional Office failed to count the ballots of four voters, noting that this objection was untimely and that only one of the four

voters had returned a ballot, which the Regional Director determined was ultimately counted.

The Board then denied VTCU's request for review of the Regional Director's decision and certification. In doing so, the Board determined that even if the Regional Office erroneously counted six void ballots with printed rather than cursive signatures pursuant to Objection 3(e), this error was nondeterminative. Significantly, in its request for Board review, VTCU did not challenge the Regional Director's dismissal of Objections 3(c) and 3(f), denial of VTCU's request for a post-election hearing, or denial of VTCU's second request for an extension of time to file an offer of proof.

Following the issuance of the Board's decision, VTCU refused to bargain with the Union. Consequently, the Union filed unfair labor practice charges, and the Board's General Counsel issued a complaint charging VTCU with violations of sections 8(a)(1) and (5) of the Act. The Board, on a motion for summary judgment, held that VTCU violated sections 8(a)(1) and (5) of the Act and ordered VTCU to bargain with the Union. *VTCU Corp.*, slip op. at 1-2. VTCU then filed a petition for review in this court, and the Board cross-applied for enforcement of its order.

## II. ANALYSIS

### A. *Standard of Review*

"The Board's discretion to assess the propriety and results of representation elections is broad, and we will overturn a Board decision to certify an election only in the 'rarest of circumstances.'" *Am. Bottling Co. v. NLRB*, 992 F.3d 1129, 1140 (D.C. Cir. 2021) (quoting *N. of Mkt. Senior Servs., Inc. v. NLRB*, 204 F.3d 1163, 1167 (D.C. Cir. 2000)). Accordingly,

we merely inquire ''whether the Board has followed appropriate and fair procedures'' and has ''reached a rational conclusion in addressing any objections to the election.'' *Longmont United Hosp. v. NLRB*, 70 F.4th 573, 578-79 (D.C. Cir. 2023) (quoting *PruittHealth-Va. Park, LLC v. NLRB*, 888 F.3d 1285, 1292 (D.C. Cir. 2018)). "We will uphold the Board's decisions if they are not arbitrary, capricious, or grounded in legal error, and if substantial evidence supports the Board's factual findings.'' *Id.* at 578 (quoting *RadNet Mgmt., Inc. v. NLRB*, 992 F.3d 1114, 1119 (D.C. Cir. 2021)). Moreover, "[w]e review the Board's grant of summary judgment in the enforcement proceeding for abuse of discretion." *Id.* at 579 (citations omitted).

## B. *Alleged Union Misconduct (Objections 1 and 2)*

VTCU argues that the Board erred in declining to find that Union agents engaged in coercive and threatening behavior toward voters. In support of this claim, VTCU relies on its proffered evidence that individuals – allegedly affiliated with the Union – harassed or threatened three employees. We conclude that the Board's rejection of this evidence is supported by the record and consistent with Board precedent.

As an initial matter, we disregard VTCU's original objection made to the Regional Director that Union agents threatened employees regarding their immigration status. It is well settled that a party must raise an objection with the Board in its request for "Board review of the underlying representation proceedings in order to preserve the issues for consideration in subsequent unfair labor practice proceedings." *PruittHealth*, 888 F.3d at 1295 (first citing 29 C.F.R. § 102.67(g); and then citing *Matson Terminals, Inc.*, 361 NLRB No. 50, slip op. at 1 n.1 (Sept. 26, 2014)). Otherwise, we lack jurisdiction to evaluate that claim and the objection is

considered waived. *Id.* at 1295-96; *see* 29 C.F.R. § 102.46(a)(1)(ii) ("Any exception to a ruling, finding, conclusion, or recommendation which is not specifically urged will be deemed to have been waived."); *see also* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). Put differently, the NLRA limits our jurisdiction to "objections made before the Board [that] were adequate to put the Board on notice that the issue might be pursued on appeal." *United Food & Com. Workers Union, Local 400 v. NLRB*, 989 F.3d 1034, 1037 (D.C. Cir. 2021) (quoting *Consol. Freightways v. NLRB*, 669 F.2d 790, 794 (D.C. Cir. 1981)).

Here, VTCU failed to raise any objection involving immigration-related threats in its request for Board review. Nor did VTCU otherwise properly challenge the Regional Director's determination that this objection lacked any evidentiary support. Therefore, we lack jurisdiction to consider this objection.

The Regional Director found that VTCU's allegations of *non*-immigration-related threats raised new objections that had not been raised in VTCU's initial objections. Therefore, the Board properly concluded that the objections were untimely. An objecting party has five business days following the tally of ballots to file objections with the Regional Director. 29 C.F.R. § 102.69(a)(8). And under Board precedent, the Board may not consider an employer's allegations of misconduct in its offer of proof that are unrelated to its timely filed objections, unless the employer shows by clear and convincing proof that this evidence is newly discovered and previously unavailable. *See, e.g.*, *John W. Galbreath & Co.*, 288 N.L.R.B. 876, 878 (1988); *Rhone-Poulenc, Inc.*, 271 N.L.R.B. 1008, 1008 (1984).

In this case, VTCU's initial objections to the Regional Director following the election included a claim that Union agents threatened employees regarding their immigration status. However, VTCU's subsequent offer of proof to the Regional Director and request for review to the Board did not raise these immigration-related threats. Rather, VTCU argued that Union agents intimidated and harassed three employees by, *inter alia*, refusing to leave an employee's property and sending him vulgar text messages, videotaping another employee at her home, and offering to help another employee cast her ballot. While those allegations concerned threatening conduct by Union agents, the evidence was totally unrelated to any threats concerning employees' immigration status. And the allegations regarding *non*-immigration threats had never been raised by VTCU in its timely filed objections. Tellingly, the record is bereft of proof that the purported evidence regarding *non*-immigration threats was previously unavailable and newly discovered so as to justify VTCU's inclusion of these claims in its offer of proof to the Regional Director and request for review to the Board. The Board, therefore, properly declined to credit any of the foregoing objections.

VTCU has also forfeited pressing any of these claims with this court. VTCU waited until its reply brief to this court to argue that the purported evidence regarding Union threats was properly raised in its initial objections and offer of proof to the Regional Director and then presented to the Board in its request for review, or that special circumstances excused the untimely submission of its claims to the Board. We will therefore not address these claims. *See Shands v. Comm'r of Internal Revenue*, 111 F.4th 1, 9 (D.C. Cir. 2024) ("[A]rguments raised for the first time in a reply brief are forfeited." (citation omitted)).

**C.** *Alleged Regional Office Misconduct (Objection 3)*

VTCU next contends that the Board erred in rejecting its objections alleging that the Regional Office mishandled the election. In addressing VTCU's claims, the Regional Director applied the reasonable-doubt test. Under this standard, to invalidate an election based on alleged misconduct by a Regional Office, a party must show that "the alleged irregularit[ies] raised 'a reasonable doubt as to the fairness and validity of the election.'" *GHG Mgmt. LLC v. NLRB*, 106 F.4th 1166, 1172 (D.C. Cir. 2024) (quoting *Guardsmark, LLC*, 363 N.L.R.B. 931, 934 (2016)). And it requires a "showing of prejudicial," not merely "speculative" harm. *Id.* (quoting *Guardsmark*, 363 N.L.R.B. at 934). Before the Board, VTCU never challenged the Regional Director's use of the reasonable-doubt test. We find no error in the Regional Director's application of the standard.

### 1. *Alleged Inadequate Polling Period (Objection 3(a))*

VTCU asserts that the Board erred in limiting the polling period to three weeks. It claims that known postal service delays in Pocatello and problems with mail ballot elections rendered this polling period insufficient for voters to timely receive and send their ballots. As a result of these alleged issues, VTCU contends that 16 eligible voters were possibly disenfranchised because their ballots never arrived. VTCU also points to other Board elections with higher voter turnout or longer polling periods to demonstrate the flaws of the three-week polling period. We find no merit in these arguments.

First, it is noteworthy that the parties consented to a mail ballot election with a three-week polling period. Our precedent makes clear that, absent changed or unusual circumstances, the Board's compliance with a stipulated election agreement is not

an election irregularity caused by the Board's conduct. *See NCR Corp. v. NLRB*, 840 F.3d 838, 842-43 (D.C. Cir. 2016) (holding that the Board's counting of ballots received by the stipulated deadline was not an irregularity); *see also Comput. Assocs. Int'l, Inc. v. NLRB*, 282 F.3d 849, 852 (D.C. Cir. 2002) (noting that stipulations are "binding on the parties absent a showing of 'changed or unusual circumstances'" (citations omitted)). And VTCU has not attempted to show such circumstances.

Furthermore, under Board precedent, the parties' stipulation to an election by mail ballot and a particular polling period bars VTCU from challenging the election on those grounds. *See Coll. Bound Dorchester, Inc*., Case No. 01-RC-261667, 2021 WL 2657318, at *1 n.1 (N.L.R.B. June 25, 2021) (determining that an employer waived its right to object to a mail ballot election by stipulating to permitting the Regional Director to decide between a manual or mail ballot election); *see also Aaron Med. Transp., Inc.*, Case No. 22-RC-070888, 2013 WL 6673598, at *1 n.1 (N.L.R.B. Dec. 18, 2013) (rejecting a challenge to the Board's adherence to stipulated polling hours); *Cmty. Care Sys. Inc.*, 284 N.L.R.B. 1147, 1147 (1987) ("[W]here the election has gone ahead pursuant to the parties' stipulation … and it does not appear that the election arrangements were such that employees were prevented from voting, we see no basis for permitting the unsuccessful party to attack the election on the basis of a [stipulated] condition ….").

Further, it is well established under Board precedent that low turnout is an inadequate ground to overturn an election, without other evidence that eligible voters were deprived of an adequate opportunity to vote. *See CenTrio Energy S. LLC*, 371 N.L.R.B. No. 94, slip op. at 1 (Apr. 28, 2022). And as discussed below, VTCU has failed to provide such evidence.

2.  *Alleged Failure to Provide Ballots to Eligible Voters (Objection 3(b))*

VTCU also claims that the election should be overturned because 16 (not 17) eligible voters did not receive or did not timely receive ballots due to postal service delays. The Board found otherwise. The record and established precedent support the Board's decision rejecting VTCU's claims.

Our decision in *Antelope Valley Bus Co., Inc. v. NLRB*, 275 F.3d 1089 (D.C. Cir. 2002), is instructive. In that case, we rejected an employer's objection that four employees failed to receive mail ballots, finding that those employees neglected to request replacement ballots as provided in the stipulated election agreement and notice of election. *Id.* at 1091-94. Thus, we held that the employees had adequate notice and opportunity to vote because the Board provided those "employees who failed to receive mail ballots with the opportunity to vote by replacement ballot." *Id.* at 1094.

Here, the Agreement and Notice of Election directed employees to contact the Board by September 14 if they had not received their original ballot. Notably, VTCU does not claim that employees did not view or receive the Notice of Election. Nor does it offer evidence to show that any of the 16 employees contacted the Regional Office to request a replacement ballot. To the contrary, the Regional Director explained that the administrative investigation revealed that the Regional Office mailed original ballots to the cited employees, that one of the employees voted, and that there were no records of the other employees contacting the Regional Office for duplicate ballots. Assuming *arguendo* that those employees did not receive their original ballots, we nonetheless find that they had adequate notice and opportunity to vote because they could have requested a replacement ballot. And nothing in the record

indicates that they did so. The Board's decision in this case comports with precedent and is supported by substantial evidence.

3. *Alleged Counting of Six Void Ballots (Objection 3(e))*

VTCU next argues that the Board erred in rejecting its claim that the Regional Office counted six legally void ballots. It contends that the ballots were void because the voters printed their names on the envelope containing the ballots. We find that this argument is unavailing and is belied by the record.

Board precedent establishes that ballots returned with no signatures or with printed names on the return envelopes are void. *Longmont*, 70 F.4th at 579. This rule has no application here. First, VTCU does not dispute the Regional Director's findings that the six ballots bore printed signatures, nor that it failed to claim that the voters' printed signatures were not their actual signatures. Second, the parties agreed to count the ballots. Therefore, there is no basis for finding any error in the Board's judgment.

Although VTCU undisputedly agreed to count the ballots, it now asserts that this decision should not have been delegated to the parties. This argument is meritless. To be sure, Board guidance provides that a Board agent should void a ballot if the parties cannot agree on whether a name is printed, and the agent determines that the name is printed. NLRB, CASEHANDLING MANUAL, PART TWO, REPRESENTATION PROCEEDINGS § 11336.5(c) (2023). However, there is no such directive that the Board must void a ballot if the Board and parties agree that a name is actually a printed signature and consent to count the ballot. VTCU identifies no authority to the contrary.

4. *Alleged Provision of Ballots to Four Non-Eligible Voters (Objection 3(c)), Alleged Failure to Respond to Telephonic Requests for Duplicate Ballots from Two Employees (Objection 3(d)), and Alleged Counting of Ballots of Employees Who Claimed They Did Not Vote (Objection 3(f))*

VTCU has forfeited its remaining objections regarding alleged Regional Office misconduct. As to Objection 3(d), VTCU failed to present any coherent argument regarding this objection in its briefs, other than perfunctorily mentioning that two voters did not receive return calls or duplicate ballots from the Regional Office. *See Khine v. U.S. Dep't of Homeland Sec.*, 943 F.3d 959, 967-68 (D.C. Cir. 2019) ("[I]t is not enough merely to mention a possible argument in the most skeletal way." (citation omitted)). Similarly, as to Objections 3(c) and 3(f), these objections were not addressed at all in VTCU's opening brief and are likewise forfeited. *See Shands*, 111 F.4th at 9.

We also lack jurisdiction over Objections 3(c) and 3(f) because VTCU failed to include these objections in its request for Board review. *See PruittHealth*, 888 F.3d at 1295-96.

5. *Possible-Disenfranchisement Test*

In an effort to avoid rejection of its objections under the reasonable-doubt test, VTCU argues that the possible-disenfranchisement test should govern its objections relating to the Regional Office. Under that test, "an election will be set aside if the objecting party shows that the number of voters *possibly* disenfranchised by an election irregularity is sufficient to affect the election outcome." *GHG Mgmt.*, 106 F.4th at 1172 (quoting *Garda World Sec. Corp.*, 356 N.L.R.B. 594, 594 (2011)).

However, VTCU waived this challenge to the use of the reasonable-doubt test due to its failure to raise this issue before the Board. *See PruittHealth*, 888 F.3d at 1295-96. Regardless, the outcome in this case would not change under the possible-disenfranchisement test. Even if we credit the five challenged ballots and six allegedly void ballots (Objection 3(e)), the Union would still prevail by 10 votes. In addition, the remaining objections involving the Regional Office would still be foreclosed because of forfeiture (Objection 3(d)), the Act's jurisdictional bar (Objections 3(c) and 3(f)), and clear precedent establishing that there were no election irregularities caused by the Board's conduct (Objections 3(a) and 3(b)).

### D. *Request for a Post-Election Hearing and Second Request for an Extension of Time to Submit an Offer of Proof*

Finally, VTCU challenges the Board's denial of its request for a post-election hearing and second request for an extension of time to submit an offer of proof in support of its objections. However, we are jurisdictionally barred from considering these claims because VTCU failed to raise these issues in its request for Board review. *See PruittHealth*, 888 F.3d at 1295-96.

### III. CONCLUSION

For the reasons set forth above, we deny VTCU's petition for review and grant the Board's cross-application for enforcement of its order.

*So ordered.*